## SMITH *v.* DRESSELHOUSE.

1. WATERS AND WATERCOURSES— MILL RIGHTS — CONVEYANCES— OPERATION.

   The grant of a mill operated by water carries with it, unless express reservation is made, the right to the use of the watercourse coming to the mill and furnishing power for working it, and also to the canal or raceway which carries the water from the mill, to the full extent of the grantor's right and power so to grant them

2. EASEMENTS—TRANSFER—APPURTENANCES.

   Where the owner of two tenements sells one of them, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property which the vendor retains.

3. DEEDS—CONSTRUCTION—PROPERTY GRANTED.

   Every grant of a thing naturally imports a grant of it as it actually exists.

4. WATERS AND WATERCOURSES—MILL RIGHTS — CONVEYANCES — OPERATION.

   Two mills at opposite ends of a dam, after being owned in severalty for many years, became the property of one person who mortgaged them together, with their appurtenant water right, and subsequently mortgaged the west one to the same mortgagee. The second mortgage was foreclosed, the mortgagee purchased, and conveyed the west mill together with "the mill privilege and water power there situate   *   *   * together with the right and privilege to use and make use of the water power there situated and hereby conveyed in any manner whatsoever." *Held*, that unity of title did not operate to change the water right appurtenant to each mill, and that the claim of the grantee of the west mill that by his deed he acquired the whole of the water power was untenable.

5. SAME—LACHES—EFFECT.

   Laches of fifteen years in asserting his claim *held* fatal and not excused by advice of counsel that, subject to his right to use, the mortgagor and his grantees might make lawful use of the water while it was on their premises.

Appeal from Washtenaw; Kinne, J. Submitted February 19, 1908. (Docket No. 82.) Decided May 1, 1908.

Bill by Edwin R. Smith against Charles Dresselhouse to enjoin the use of certain water power. From a decree for defendant, complainant appeals. Affirmed.

*A. F. & F. M. Freeman* (*E. B. Norris*, of counsel), for complainant.

*A. J. Waters* (*Frank E. Jones*, of counsel), for defendant.

OSTRANDER, J. The title to two parcels of land, one on either bank of the river Raisin, theretofore owned and, with the appurtenant water power, conveyed in severalty, upon each of which parcels a mill, operated by water power, had for many years existed, passed to a single owner. The water power is not created by the use of the water from the river in its natural state. There is a pond or reservoir, a dam holding the water and causing it to overflow a considerable territory. The owner, under date June 6, 1878, mortgaged both parcels of land and in the mortgage conveyed, also,

"All the right and privilege which the said parties of the first part may have or possess of raising water and flowing lands for mill purposes."

Under date June 9, 1879, he executed to the same mortgagee a mortgage upon the land upon the west side of the river, the mortgage containing the following:

"Also granting and conveying to the said party of the second part, her heirs and assigns, all the right and privileges which said party of the first part may have or possess for raising water or flowing land for mill purposes, together with the privileges of the water power to be used in any manner whatsoever."

These mortgages were duly recorded. Upon foreclosure of the last-mentioned mortgage, the sale taking place

December 1, 1888, and the mortgagee being the purchaser, the commissioner's deed describes the property and water rights as in the mortgage. In March, 1889, being still owner of the first mortgage, the purchaser conveyed to complainant the land acquired by the foreclosure, describing the water rights in the following manner:

"The mill privilege and water power there situate, with the right to flow all the lands now overflowed by the water by the mill dam at its present height together with the right and privilege to use and make use of the water power there situated and hereby conveyed in any manner whatsoever."

In 1894, the original owner and mortgagor conveyed to the mortgagee—counsel have assumed in payment of the first mortgage—the land on the east side of the river:

"Also conveying the mill privilege and water power there situate with the right to flow all of the land now overflowed by water and necessary to overflow by water, to keep and maintain the dam there situated at its present height together with the right and privilege to use and to make use of the water power there situated and hereby conveyed in any manner whatsoever."

The purchaser (mortgagee) conveyed this land to defendant May 4, 1900, describing water rights as last above set out. Previously, she had leased the sawmill and mill yard and "also all the water power of the river Raisin, all situated on the east side of the river.

Defendant first went into possession of the land on the east side of the river in 1897 under a contract for its purchase, and has ever since been in possession. He repaired the sawmill and flume, put another water wheel in position, and put in feed-grinding machinery. Complainant seems to have made no use of the water; on the contrary, he filled up the flume on his land with earth.

It is the contention of complainant that at the foreclosure sale the purchaser acquired the lands on the west side of the stream and all the water power—that the owner and mortgagor was divested of all water rights and that

the deed from the purchaser to himself conveyed all water rights. He seeks to enjoin defendant from exercising any authority over, and from using, the water power, flowage, and dam, and a decree determining that he is exclusive owner. Assuming that the owner of both banks of a stream, of a dam, of the right to impound water and set it back upon upper proprietors, and of all water rights appurtenant to the land on either bank, may by grant of either parcel of land attach to it all of the water rights, a point not here for decision and not decided, it is clear that the intent to do so, there being, and having for many years been, a mill on each parcel, must be clearly expressed. Undoubtedly, the grant of a mill operated by water carries with it, unless express reservation is made,

" The right to the use of the watercourse coming to the mill and furnishing power for working it, and also to the canal or raceway which carries the water from the mill, to the full extent of the grantor's right and power so to grant them. *Prescott* v. *White*, 21 Pick. (Mass.) 341." *Richardson* v. *Bigelow*, 15 Gray (Mass.), 156.

See, also, *Horne* v. *Hutchins*, 71 N. H. 117; *Curtis* v. *Norton*, 58 Mich. 411; *Mandeville* v. *Comstock*, 9 Mich. 536, 539. But the implication must be clear which would sustain the grantee in a claim that the rights appurtenant to the property had been increased or diminished. Complainant's rights do not rest in implication but in a grant. The rights of his grantor rested in a grant. It is a general rule of the law of easements that where the owner of two tenements sells one of them, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property which the vendor retains. *Seymour* v. *Lewis*, 13 N. J. Ch. 439. Every grant of a thing naturally imports a grant of it as it actually exists. *United States* v. *Appleton*, 1 Sumn. (U. S.) 502. Whether we consider the words employed in the mortgage or in the deed or look for evidence of intention in the physical situation

of the property and the relations of the parties, we reach the same conclusion. We should expect that a mortgage of all the land and of all the water power carried a grant of all of the water power. We should not expect that a grant of the land on one side of the river only, the grantor retaining the land and mill on the other side, and using the water there appurtenant, conveyed an exclusive right to the entire water power. The terms of the grant to complainant are express and seem to be unambiguous. The land is described by metes and bounds. One boundary is the center of the main channel of the river. The mill tract and the mill are within the boundaries. It is the mill privilege and water power "there situate," i. e., appurtenant to the land conveyed, which is deeded, with the right to flow lands and to "use and make use of the water power there situated." Looking outside the deed, it appears that upon each bank of the river mills had been built and in operation for many years. For many years the water privileges were owned in common. Unity of title did not of itself operate to change the water rights appurtenant to each mill. A mortgage or a deed of either parcel would have still conveyed appurtenant rights. When complainant received his deed of the land on the west side of the river, his grantor still held her mortgage upon all the land. It will not be assumed that whatever she may have supposed her rights in the water to be, she intended to render the mill property on the east side valueless. For the reasons stated, the relief prayed for was properly denied to complainant.

There are also other sufficient grounds for denying him relief. When complainant obtained his deed, the original owner was in possession of the land on the east side of the river and using the water in operating the mill. He continued to use it for six years. The tenant of his grantee used it. Defendant has used it since 1897. He has expended money in repairing the flume and in new machinery. Complainant has in no manner interfered with or questioned this use of the water or defendant's

right and has asserted no claim to an exclusive right to control it until he began this suit in 1906. He explains this conduct by his reliance upon advice of counsel obtained in 1889. A letter of advice from counsel appears in the record. It is to the effect that, subject to the right of complainant to use, the mortgagor and his grantees may make lawful use of the water while it is on their premises; that the grant was not a grant of the water but of the power, with the use of which the mortgagor and his grantees could not interfere to the detriment or injury of complainant. Complainant testified that when he consulted counsel he took the commissioner's advertisement of the sale, told counsel that he understood defendant had a contract and certain rights on the other side of the river and was then working about the mill. He is chargeable with notice of defendant's claim of right. He at one time, at the request of defendant, paid part of the expense of repairing the dam. He also testified:

"I got the impression some way that Mr. Dresselhouse had been there nearly long enough, nearly fifteen years, and I wanted to look up the title."

This was just before beginning this suit. Whatever may have been the object of complainant in purchasing this mill site and the power, he has rested too long upon the rights which he now asserts—rights disputed by his deed, by his grantor's conduct, by defendant's record title and conduct, and by his own inaction.

In the decree, the court below settled the respective rights of the parties in and to the use and employment of the water and the power by the determination that each was entitled as tenant in common with the other to one-half part thereof. In a form of decree prepared by complainant's counsel, it is asked that the court, if exclusive rights were denied, award to complainant a two-thirds interest instead, and to defendant a one-third interest, upon the ground that the intake and flow on the west side of the stream has always been twice the size of the

intake on the east side of the river. This fact might, in some cases, have weight in determining proportional rights to water if it indicated the quantity actually used and its value as energy actually secured. In this case, the fact appears to be immaterial. Some earlier deeds granted with each description of land one-half the water. The evidence as well sustains the órdinary presumption that each tenant in common has a moiety as it sustains complainant's contention. We do not find reason for modifying the decree in this particular. It is affirmed, with costs of the appeal to the defendant.

GRANT, C. J., and BLAIR, MONTGOMERY, and MOORE, JJ., concurred.