BROWN v. FULLER.

1. Easements—Drains and Sewers—Way by Necessity.
    The grantor of land by warranty deed is not entitled to maintain a sewer extending across the land of the grantee, and through and above the bottom of a proposed cellar, which the grantor knew at the time of executing the conveyance was to be dug, without a reservation of such right, or strict necessity therefor, continuous user, and the apparent existence of the easement. Bird and Moore, JJ., dissenting.

2. Same—Implication.
    The purchaser of one of two tenements owned by the vendor takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains.

3. SAME—CONVEYANCES—WARRANTIES.

   No reservation of an easement by implication arises from a conveyance of premises by a deed containing full covenants of warranty, without express reservation of the right or a strict necessity therefor.

Appeal from Kalamazoo; Knappen, J. Submitted October 12, 1910. (Docket No. 52.) Decided March 31, 1911.

Bill by Constance Reed Brown against Horace J. Fuller and Lizzie P. Fuller to enjoin defendants from obstructing a sewer and to require them to rebuild portions already destroyed. From a decree for complainant, defendants appeal. Reversed and bill dismissed.

*E. M. Irish,* for complainant.

*Osborn & Mills,* for defendants.

Complainant and defendants were, respectively, owners of adjoining lots facing Burdick street, in the city of Kalamazoo. Upon complainant's lot, which was 22 feet wide and about 230 feet deep, extending to Farmer's alley, there had stood for many years a three-story brick block, running east from Burdick street about 90 feet. To the east and in the rear of said brick building, a one-story building extended eastward to the alley, about 130 feet. The sewage from the brick block was conducted under the one-story building to a lateral sewer in Farmer's alley. The roof drainage of the block was carried onto the roof of the one-story building and thence to the alley. Defendants desired to erect a theater, and, their own lot not affording sufficient area for their purpose, negotiated with complainant for the purchase of the rear or easterly 130 feet of her lot. On November 9, 1908, a warranty deed of said parcel with full covenants against incumbrances was executed by complainant to defendants for a consideration of $5,000. This deed contains the following agreement:

"It is understood and agreed between the parties here-

to, as a part of the consideration of this deed, that the second parties are to build a wall on the west side of the land above conveyed, about 16 inches thick and about 40 feet in height, and that the party of the first part is to own said wall jointly with the second parties, and it is to be used as a party wall. The center of the said wall to be on the west line of the land above conveyed."

Defendants, after said purchase was completed, proceeded to tear down the one-story building which stood on the lot conveyed, and commenced excavation for the basement under the proposed theater. In excavating, the sewer from complainant's block was uncovered, and as defendants desired to make a basement nine feet deep, which was three or four feet deeper than the sewer, the sewer was cut, and the excavation proceeded. In the negotiations complainant did not advise defendants of the existence of the sewer, and the record does not show that they or either of them knew it was there.

After the sewer was cut, complainant filed her bill of complaint, praying for a mandatory injunction compelling defendants to restore the sewer connection and roof drainpipe, and for a permanent injunction restraining defendants from breaking or interfering with the sewer and from interfering with the passage of the roof drainage over said lot. A preliminary mandatory injunction was granted *ex parte* which the court refused, on motion, to vacate. This injunction was granted on January 5, 1909. The cause came on to be heard on the merits October 17, 1909. In the meantime, defendants had completed the theater building, and, in obedience to the mandate of the court, had taken care of the complainant's sewage and roof drainage, at considerable expense. Upon final hearing, the preliminary injunction was made permanent. The decree further provides that the expense of maintenance and repairs of the sewerage connection and the storm pipe shall be borne equally by the parties. From this decree defendants appeal.

BROOKE, J. (*after stating the facts*). The sole ques-

tion for determination here is whether or not there is an implied reservation of an easement over the land sold by complainant to defendants. It is said that in reaching the conclusion he did, the learned circuit judge relied upon the case of *Smith* v. *Dresselhouse*, 152 Mich. 451 (116 N. W. 387). An examination of the facts in that case will at once demonstrate that it differs vitally and fundamentally from the case here considered. There the owner of two adjoining tenements, located upon either side of a river, upon each of which stood a mill, sold one of the tenements to the complainant in that case, and, as appurtenant to the tenement conveyed, sold the water rights. The owner and his grantees continued to operate the mill on the other side of the river, using the water for that purpose. Complainant filed his bill to enjoin the use of the water. This court held that, as to the water, complainant was a tenant in common with the owner of the adjoining tenement on the opposite bank of the stream. Mr. Justice OSTRANDER, in stating the general rule, there said:

"It is a general rule of the law of easements that where the owner of two tenements sells one of them, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property which the vendor retains."

The matter under consideration was a grant, not a reservation, and in discussing the effect of the grant he further said:

"We should not expect that a grant of the land on one side of the river only, the grantor retaining the land and mill on the other side, and using the water there appurtenant, conveyed an exclusive right to the entire water power. The terms of the grant to complainant are express and seem to be unambiguous. The land is described by metes and bounds. One boundary is the center of the main channel of the river. The mill tract and the mill are within the boundaries. It is the mill privilege and water power 'there situate,' *i. e.*, appurtenant to the land conveyed, which is deeded, with the right to flow lands

and to 'use and make use of the water power there situated.'"

Assuming, therefore, that the rule was correctly stated, the case was determined, not by any application of the rule, but by a construction of the terms of the grant. Nor is it applicable to the case under consideration. Here, the sewer was under ground. It was not apparent, and defendants are not shown to have had any knowledge of its existence under the land purchased by them. But, if they had such knowledge, that fact would not be controlling, because complainant knew that the use to which this property was to be devoted would uncover the sewer and, as it existed, destroy it.

Even if it could be said that a grantor under any circumstances could by implication reserve the right to continue an underground sewer in the premises granted, which we do not determine, it would not aid complainant. Here, it is sought by implication to reserve the right to have the existing sewer destroyed and rebuilt in the air through the basement of the tenement to be erected upon the demised lands. Simply to state such a proposition would seem to be a sufficient answer.

The rule applicable to implied reservations of easements is stated in 14 Cyc. p. 1171, as follows:

"As regards implied reservations of easements, the matter stands on principle in a position very different from implied grants. If the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant. To say that a grantor reserves to himself in entirety that which may be beneficial to him, but which may be most injurious to his grantee, is quite contrary to the principle upon which an implied grant depends, which is that a grantor shall not derogate from or render less effectual his grant or render that which he has granted less beneficial to his grantee. Accordingly, where there is a grant of land with full covenants of warranty without express reservation of easements, the best considered cases hold that there can be no reservation by implication, unless the easement is strictly one of necessity."

Cases are cited from many jurisdictions in support of this statement of principle, and we think it is in accord with the weight of modern authority. The great weight of authority touching the question, with reference to subterranean drainage, is to the effect that, if the owner of the land under which there is such a drain conveys a part of it with full covenants of warranty without reference to the drain, no easement is reserved.

The grantor and his privies, under such circumstances, are estopped to claim any interest in the premises so granted. To permit such a claim would be to allow the grantor to derogate from the terms of his grant which, by every applicable principle, is forbidden. The authorities upon the subject are collected and discussed in 10 Am. & Eng. Enc. Law (2d Ed.), p. 420. See, also, 14 Cyc. p. 1169, and cases there cited, and Farnham on Waters & Water Rights, vol. 3, pp. 2454, 2455.

In the recent case of *Covell* v. *Bright*, 157 Mich. 419 (122 N. W. 101), which upon principle much resembles the case at bar, we said:

"To entitle the complainant to a decree, the burden was upon him to establish that the servitude was apparent, continuous, and strictly necessary to the enjoyment of his lands"—citing cases.

In New Jersey, a different doctrine for a long time obtained, based upon the ruling in the celebrated case of *Pyer* v. *Carter*, 1 Hurlst. & N. 916, and those cases which followed the rule there laid down. *Pyer* v. *Carter* has frequently been severely criticised, and was finally distinctly overruled in England. The case of *Toothe* v. *Bryce*, 50 N. J. Eq. 589 (25 Atl. 182), contains a review of the English and American cases, questions the soundness of the doctrine announced by that court in its earlier decisions, and seems to recognize the distinction between an implied grant of an easement and an implied reservation.

While it is apparent from the record that it will be somewhat expensive to dispose of the sewage from com-

plainant's building otherwise than over defendants' land, it by no means appears that it is impossible to do so. There is not made out, therefore, a case of strict necessity.

The case presents this alternative: Either complainant at some, perhaps considerable, expense to herself, must take care of her own sewage and storm waters, or the defendants who purchased and paid for a tenement warranted to be free from all incumbrances, must take that tenement charged in perpetuity with an incumbrance of a very serious character and one which is liable, through the breaking or stoppage of the drain, to cause serious annoyance and damage.

Why should defendants be compelled to accept this burden? Why should they be charged in perpetuity with the duty of defraying one-half of the expense of maintaining complainant's sewer as well as the cost of its original construction? So far as the record discloses, they have done no act which was not fully warranted by the terms of the grant to them. They have sought to make use of the granted tenement in a lawful manner and in a manner and for a purpose known by complainant before the sale.

Touching the disposition of the storm waters, it is clear that, by the sale of the one-story building upon which it had theretofore been carried to the alley, with the knowledge that said building was to be immediately demolished, complainant must have known that such drainage would be interrupted. The very terms of her written contract show this, because she stipulated for the erection of a brick wall between the premises granted and those retained. This wall was to be 16 inches thick and about 40 feet in height. It is obvious that she could not have contemplated the carrying of her roof waters over that wall. At that moment it was apparent that some new arrangement must be made to care for this water. Defendants did not contract to build a new drain and carry it across their own property to the alley, nor did they agree to construct a new sewer, and we know of no principle of equity which would compel them to do so.

The decree of the court below is reversed, and the bill of complaint is dismissed, and, inasmuch as the record discloses that defendants have expended certain sums of money in obedience to the mandate of the court in caring for complainant's sewage and water, the record will be remanded for the purpose of ascertaining the exact amount of such expenditure which, when ascertained, shall be decreed to be a debt due from complainant to defendants for the collection of which execution may issue.

OSTRANDER, C. J., and HOOKER, MCALVAY, BLAIR, and STONE, JJ., concurred with BROOKE, J.

BIRD, J. (*dissenting*). I am of the opinion that the trial court reached a right conclusion upon the law and facts in this case and that it ought to be affirmed by this court.

In the case of *Smith* v. *Dresselhouse*, 152 Mich. 451 (116 N. W. 387), Mr. Justice OSTRANDER, discussing the doctrine of implied reservations, quoted, with approval, the following general rule of easements:

" It is a general rule of the law of easements that where the owner of two tenements sells one of them, the purchaser takes the portion sold with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property which the vendor retains. *Seymour* v. *Lewis*, 13 N. J. Eq. 439 (78 Am. Dec. 108). Every grant of a thing naturally imports a grant of it as it actually exists.    *United States* v. *Appleton*, 1 Sumn. (U. S.) 502 (Fed. Cas. No. 14,463)."

Mr. Justice Selden, in speaking of this rule, said:

" This is not a rule for the benefit of purchasers only, but is entirely reciprocal.    Hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it." *Lampman* v. *Milks*, 21 N. Y. 505.

If we are to take the foregoing rule as our guide in determining this case, I am very firm in the conviction that

defendants took the deed of the premises burdened with the sewer. In arriving at this conclusion, the distinction made by Mr. Justice BROOKE, in his opinion, between implied grants and implied reservations, has not been overlooked. Although there is a difference of opinion in the cases as to the degree of necessity required to create them, the better rule seems to be, and the one supported by the weight of authority is, that a reasonable necessity is sufficient to raise an implied grant; whereas, a strict necessity is necessary to raise an implied reservation. This court has adopted the strict necessity rule in *Covell* v. *Bright*, 157 Mich. 419 (122 N. W. 101). The question therefore arises whether the circumstances of this case are such as to bring it within the rule of strict necessity. A study of the record has persuaded me that they do. To establish her case it was necessary for complainant to show that the easement claimed was *apparent, continuous*, and *strictly necessary*.

Was the easement apparent? "Apparent easements" have been defined to be those the existence of which appears from the construction or condition of one of the tenements so as to be capable of being seen or known on inspection. 10 Am. & Eng. Enc. Law (2d Ed.), p. 405. To this class of easements belongs the bed of a running stream, an overhanging roof, a pipe for carrying water, a drain, or a sewer. *Fetters* v. *Humphreys*, 18 N. J. Eq. 262. And the mere fact that a drain or aqueduct, as the case may be, is concealed from casual vision, does not prevent it from being "apparent" in the sense in which that word is used in that connection. *Larsen* v. *Peterson*, 53 N. J. Eq. 88 (30 Atl. 1094).

Defendant testified that he did not know that the sewer extended through the premises conveyed to him. If he had no actual knowledge, he did have constructive knowledge of that fact. He had owned for upwards of 25 years premises side by side with the premises in question, with like improvements. He knew there was a sewer which served complainant's premises because he had the front

portion of them under lease nearly two years before he purchased the rear portion, and at the time there were five water-closets in the portion he had under lease.    He knew that the sewer from his own premises was discharged into the Farmer's alley sewer, and must have known that there was no other sewer into which it could be discharged and, if he did, it would not be unreasonable to assume that he knew the same thing was true of complainant's premises.    On one occasion, prior to his purchase, a portion of the floor in the rear part was taken up, which disclosed the sewer, and defendant was present at that time. Defendant had, before purchasing the property, talked and planned with complainant's husband about building a theater where he has since erected one, and, in doing so, undoubtedly considered the question of plumbing among other questions of construction and arrangement.    A knowledge of these facts was sufficient in the law to put defendant upon inquiry and to charge him with notice that the sewer traversed that portion of the premises purchased by him.

Is the easement continuous ?    The sewer had been in existence for 20 years, was of a permanent nature, was in use at the time, and was susceptible of being used and enjoyed without making an entry on defendant's premises, except for the purpose of repair.    These facts would clearly bring it within the definition of a "continuous easement."    *Larsen* v. *Peterson, supra.*

Is the easement strictly necessary to the enjoyment of complainant's premises ?    The sewer in Farmer's alley is the only one available for her use.    The city engineer testified that one might be constructed to De Visser alley, but that it would be impracticable for the reason that, where it would discharge into that sewer, it would be only 18 inches underground.    The topography of that part of the city is such that no other sewer can be constructed which will serve these premises without a prohibitive expense.    A cesspool was suggested by complainant; but the city authorities would not permit it.    She

then made an effort to buy the right of her neighbor on the north to go through the partition wall and connect with his sewer, which also discharges into the Farmer's alley sewer; but to this her neighbor would not consent. We have then a situation where complainant must be permitted to use the sewer which has served her premises for 20 years, if her building is to have any sewer service. If this situation, which nature has so fashioned that the sewage can be directed only in the direction of Farmer's alley, does not bring it within the rule of strict necessity, it would, indeed, be difficult to suggest one. If greater exigency than here exists is required before the strict necessity rule can apply, there would be little use for the existence of the rule, as its use would be so infrequent as to render it useless.

In my opinion, the trial court found his way to a very equitable adjustment of the entire matter, and I think his decree should be affirmed.

MOORE, J., concurred with BIRD, J.