## FLAX *v.* MUTUAL BUILDING & LOAN ASSOCIATION OF BAY COUNTY.

1. MORTGAGES — FORECLOSURE BY ADVERTISEMENT — CONFLICTING EQUITIES—EQUITY.

    A statutory foreclosure is not adapted to cases where there are conflicting equities; such equities can be properly considered and protected only in a court of equity.

2. SAME.

    Whether there are conflicting equities in the matter of the foreclosure of a building and loan association mortgage by advertisement involves the entire question.

3. BUILDING AND LOAN ASSOCIATIONS—MORTGAGES—FORECLOSURE— STATUTES.

    Section 10007, 2 Comp. Laws 1915, does not forbid the foreclosure of a building and loan association mortgage by advertisement, and such right of foreclosure is expressly granted by the general statute, 3 Comp. Laws 1915, § 14949, relating to foreclosures by advertisement, where there is a power of sale.

4. SAME—MORTGAGES—FORECLOSURE—ACCOUNTING.

    On the foreclosure of a building and loan association mortgage there is no more necessity for an accounting than in any other case where money is borrowed and partial payments made from time to time.

5. SAME.

    It is a question of fact whether, on foreclosure of a building and loan association mortgage by advertisement, contiguous pieces of land should have been sold as one parcel.

6. SAME.

    Under the evidence and the statutes, *held*, that the separate sale of contiguous pieces of land, under foreclosure of a building and loan association mortgage by advertisement, was proper.

7. SAME.

    The notice of foreclosure sale by advertisement under a building and loan association mortgage and the sheriff's deed covered both the land and its appurtenances and were sufficient to include an easement appurtenant to the land without a specific sale and description thereof.

8. MORTGAGES.

The fairness and good faith of a foreclosure sale under one mortgagor by advertisement is not impeached because no information was given of prior mortgages at the sale, where the mortgages were all of record.

9. SAME—FORECLOSURE BY ADVERTISEMENT—NOTICE.

A notice of foreclosure sale by advertisement need not allege the existence of prior mortgages.

10. SAME.

Where a bill attacking a foreclosure sale by advertisement under a building and loan association mortgage does not ground the claim, that the amount stated in the notice of sale was excessive, on improper methods of computation, the trial judge may, within his discretion, permit submission of sworn computations by counsel on argument.

11. SAME—FORECLOSURE—MAXIMS—APPLICABILITY.

The maxim *"de minimis non curat lex,"* *held,* applicable to a claim that the amount stated in the notice of foreclosure sale under a building and loan association mortgage was excessive.

12. SAME—FORECLOSURE—EXCESSIVE CLAIMS—BONA FIDES.

Excessiveness in the amount claimed in the notice of foreclosure sale by advertisement will not necessarily invalidate the sale, provided the claim is made in good faith.

13. SAME—FORECLOSURE—REDEMPTION—EXTENSION OF TIME.

Where the period of redemption has not expired at the time of the filing of a bill to set aside a mortgage foreclosure sale by advertisement, and it is extended by stipulation until 30 days after the decree in the trial court, the right to redeem will expire at the end of the 30-day period if the mortgage sale is not set aside as void.

14. USURY—INTENT.

To constitute the charge of usury, there must be an intent to do something which is in violation of the statute.

15. SAME—BUILDING AND LOAN ASSOCIATIONS—MORTGAGES—TAXATION—EXEMPTION.

A building and loan association mortgage which bears interest at the highest permissible rate is not usurious because of a provision that the borrower shall pay any

tax assessed upon it, such provision being mere surplusage, in view of 2 Comp. Laws 1915, § 10011, exempting such mortgage from taxation.

16. SAME.

Mortgages held by building and loan associations are exempt from taxation under 2 Comp. Laws 1915, § 10011.

Appeal from Bay; Coumans, J. Submitted June 11, 1917. (Docket No. 34.) Decided December 27, 1917.

Bill by Charlotte Flax against the Mutual Building & Loan Association of Bay County to set aside the foreclosure of a mortgage, and for an accounting. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Frank S. Pratt* (*Cooley, Hewitt & Wixson,* of counsel), for plaintiff.

*T. E. Webster* (*F. W. DeFoe,* of counsel), for defendant.

STONE, J. This case is in this court upon the appeal of the plaintiff from a decree dismissing her bill of complaint. By her bill filed September 9, 1914, she avers:

That on April 30, 1900, she was the owner of several parcels of land in Bay City, described as follows: Parcel No. 1, lot No. 1, of block 4, Jennison's Second addition; parcel No. 2, lot No. 3, of block No. 165, late Portsmouth; parcel No. 3, being a part of lots 3 and 4, block 50, plat of Lower Saginaw, as represented upon the accompanying plan attached to plaintiff's brief, which, while not in evidence, fairly shows the parcels composing what is called the laundry property; together with the perpetual use and right of way, in common with the other occupants of said lots 3 and 4, in and to the private way extending along the west

end of said land and on the southerly 12 feet of lot 4; parcel No. 5, lot No. 9, of block No. 14, Fraser's First addition; parcel No. 6, lots 6 and 7, of block 47, Daglish division of Portsmouth.

That in April, 1909, plaintiff purchased parcel No. 4 as represented on said plan, together with the perpetual use and right of way as above stated. The several descriptions of land will hereafter be referred to by the parcel numbers, as above stated.

That said parcel No. 3 had upon it a one-story and basement brick building erected by plaintiff, and which for a long time previous to plaintiff's purchase of parcel No. 4 had been used and occupied by her as a laundry, and it became expedient to acquire said parcel No. 4 for use in said business, in connection with parcel No. 3, and that after said purchase, the two parcels were occupied and used as one parcel by plaintiff in said business.

That commencing in April, 1900, plaintiff from time to time negotiated certain loans from defendant, and secured the same by mortgage on said land as follows:

No. 1, mortgage, dated April 30, 1900, on parcels
   Nos. 5, 1, 2, and 6 for.........................$2,000
No. 2, mortgage dated June 15, 1900, on parcel 3... 2,500
No. 3, mortgage dated March 11, 1903, on parcels
   2, 3, 5, and 6 for..............................   200
No. 4, mortgage dated March 4, 1904, on parcels 1,
   3, 5, and 6 for.................................   300
No. 5, mortgage dated September 28, 1904, on par-
   cels 1, 3, 5, and 6 for.........................   300
No. 6, mortgage dated March 9, 1905, on parcels
   1, 3, 5, and 6 for..............................   200
No. 7, mortgage dated October 7, 1905, on parcels
   1, 3, 5, and 6.................................   200
No. 8, mortgage dated February 14, 1906, on parcels
   1, 3, 5, and 6 for..............................   300
No. 9, mortgage dated June 29, 1907, on parcels 1,
   3, and 5 for.................................... 1,500
No. 10, mortgage dated April 22, 1909, on parcels 1,
   2, 3, and 4 for.................................   825

The following is a rough plan showing the lay of the two parcels comprising the laundry property. It is not drawn to scale, but is relatively in proportion.

All of said mortgages except No. 1, in addition to the land, covered by apt description all of the fixtures and fixed and movable machinery, tools, and appliances in the building on parcel No. 3 used in plaintiff's laundry business.

That with each of said several mortgages plaintiff subscribed for a certain number of shares of capital stock of said defendant, executed to said defendant the usual obligation or bond, and she received from it a passbook in the usual form for the entry of payments on each of the several stock subscriptions and mortgages.

The bill avers that about January 1, 1908, upon inquiry, she was informed by defendant that the balances then owing upon all of said loans theretofore made amounted to $4,085.38, and that about April 17, 1911, she was furnished by defendant with a statement that the total amounts then owing by her upon the four mortgages then remaining unpaid amounted to $2,905.37 on January 1, 1911. The plaintiff states that she made the usual weekly payments in the way provided for the repayment of loans by defendant, until the latter part of 1913, at which time she stopped making payments, because she became convinced that many payments which she had made had not been properly credited to her, and because she was informed at that time by defendant that her total indebtedness upon said mortgages was about $3,000, that in the meantime she was informed by the defendant that the said mortgages Nos. 3, 4, 5, 6, 7, and 8 had been paid in full, and that she surrendered to defendant the passbooks issued to her upon said loans, and that the same were then in defendant's possession.

Plaintiff further stated that since the making of mortgage No. 1 she had sold all of the real estate owned by her and above described, excepting parcels Nos. 1, 3, and 4, and that all of the proceeds of such

sales, with the exception of some small amounts, were paid over to defendant to apply on her said mortgage indebtedness, and that particularly, about April 1, 1907, she sold her laundry business, including machinery, for $4,000 to John A. Bedworth and Robert McQuater, and received a cash payment of $2,000, all of which was paid by said purchasers to the defendant to apply upon her indebtedness to it, and that afterwards, and on or about June 1, 1908, having previously repurchased the said laundry business, together with the tools and machinery, from said Bedworth and McQuater, she again sold the same to George C. Horrell and Jabez R. Pittsley for $3,000, the entire proceeds of which sale were paid to said defendant, at different stated times, to apply on her said indebtedness.

It is averred that during all of the time of plaintiff's said dealings with defendant, Thomas E. Webster had been the attorney and secretary thereof, and that in all of plaintiff's transactions with defendant, and in the sale of her several parcels of real estate, and in the sales of her laundry business said Webster had also acted as her attorney, and that most of her papers and vouchers bearing upon said several transactions were left by her with said Webster, and were then in his possession and control, and that she was unable to procure the same after repeated applications, and that on or about February 1, 1914, she again applied to said defendant through said secretary for information as to the state of her accounts with it, and was informed by said Webster that her total indebtedness to defendant aggregated about $3,000, and when she asked for a statement showing the amounts paid by her on said several loans, she was informed by said Webster that it would require too much time and work on the part of defendant to furnish her with such statement, and none had ever been furnished.

Plaintiff charged in her bill that many large payments had been made upon her said indebtedness to defendant, which had not been credited to her, and that, instead of owing $3,000, she did not owe to exceed the sum of $500, or thereabouts, that in February, 1914, the defendant claimed that of the above-described mortgages Nos. 1, 2, 9, and 10 were still in force, and that the other six had been paid, and that on February 11, 1914, defendant commenced a foreclosure of said mortgage No. 10, by advertisement, that the first publication was February 12, 1914, in the Bay City Democrat (a copy of which notice was attached to the bill), and that it was claimed in said notice that there was then due and owing upon said mortgage $1,588.65 principal, premium, and interest, and insurance and taxes paid by defendant; and it is averred that plaintiff was not indebted upon said mortgage to exceed $500, and that, pursuant to said notice the defendant, on May 9, 1914, through the sheriff of said county, sold the said parcels Nos. 1, 3, and 4, the same being bid in by defendant as follows:. Parcel 4 for $300, parcel 3 for $700, parcel 1 for $700.84—a total of $1,700.84, which was the amount claimed to be due and owing upon said mortgage; including all expenses chargeable against said premises. A deed was made by the deputy sheriff who conducted the sale, which deed was deposited with the register of deeds on May 14, 1914 (a copy of which was attached to the bill). In such deed no mention was made of said right of way, nor was the same mentioned at the sale. It was averred that, although it was claimed by defendant that said mortgages Nos. 1, 2, and 9 were still in force, and in part at least unpaid, and the said parcels of land so sold were, in fact, sold subject to any sums that might be owing and unpaid upon said prior mortgages, no statement or announcement was made at the time of such sale by defendant of the

amounts claimed to be owing upon said prior mortgages. It was further averred that said lands so sold were worth much more than the sums at which the same were bid off at such sale, and that said parcel No. 1 was worth at least $2,500, and Nos. 3 and 4, together with the rights of way belonging thereto, were worth at least $3,000, that said defendant then claimed that said foreclosure proceedings were regular and legal, and that upon the expiration of the time allowed for redemption, under the statute, all of plaintiff's right, title, and interest therein would be absolutely foreclosed and cut off.

The bill further charges that said foreclosure proceedings were irregular, illegal, and void, for the following reasons:

(a) That said parcels 3 and 4, being contiguous, and occupied and used as one parcel, should have been sold as one parcel.

(b) That the rights of way described in said mortgage and notice of sale should have been offered for sale, and sold as a part of such single parcel composed of the two parcels Nos. 3 and 4.

(c) That the purchase of said mortgaged property by the mortgagee was not fair and in good faith, but was unfair and unjust.

(d) That the amount claimed to be due in said foreclosure notice was grossly in excess of the true amount of the indebtedness, even if there was anything then owing on said mortgage.

(e) That the prices at which the several parcels were sold to defendant were entirely inadequate, much less than the real value thereof, and were oppressive and unfair.

(f) That the said foreclosure notice did not disclose the fact of the prior incumbrances; nor did it state that the sale would be made subject thereto.

(g) That no statement or announcement was made at such sale disclosing the fact of the prior incumbrances, nor of the amount of same.

Plaintiff in her bill alleged that she was ready and

willing and offered therein to pay defendant any and all sums which the court might determine to be equitably and justly owing by her to defendant, and that she had not made any tender for the reason that she had found it impossible to determine in what amount, if any, she was indebted. And she charged that she had paid all of said mortgage, and had overpaid. She prayed that specific answer be made as to certain items; that the defendant come to a true and just account touching the amounts owing to it upon the four mortgages Nos. 1, 2, 9, and 10; that all of the foreclosure proceedings be set aside and held for naught, including the sheriff's deed; that she be granted a reasonable time in which to pay the amount, if any, which the court might find she was indebted to the defendant upon said mortgages; and that defendant be decreed to pay her any sum which might be found due plaintiff. And there was the prayer for general relief.

The defendant answered very fully and specifically, but claimed no affirmative relief; and upon the issue thus formed the case went to a hearing before Judge Collins on February 25, 1915. The hearing, however, was not closed, and in December, 1915, application was made to amend the bill of complaint. This was opposed, but on December 30, 1915, Judge Collins entered an order allowing the proposed amendments, being paragraphs 24*a*, 24*b*, and 24*c*, and the prayer in paragraph III*a*. These amendments introduced into the case new questions.

By paragraph 24*a* plaintiff claimed that all of said mortgages contracted for the payment of interest at a rate in excess of the rate limited by law and that in consequence thereof, all of said contracts were usurious, and defendant was not entitled to recover any interest thereon, and plaintiff was entitled to have all payments made by her apply on the principal of said indebtedness.

By paragraph 24*b* it was averred that said mortgages and loans numbered 1 and 2, which were made on the 30th day of April and the 15th day of June, 1900, respectively, provided for the payment of a premium at the rate of 5 cents per week upon each share of stock and each $100 of the loan, that said premium so contracted for was not determined or arrived at by competitive bidding amongst the persons applying for or desiring loans at such times, as required by law, and that said premiums on said loans of 5 cents per week per share were bid by the secretary of defendant, and were uniformly required of all parties who procured loans at such times, and that plaintiff was told and informed by defendant that in order to procure said loans she would have to pay said premium of 5 cents per week per share, which was done, and that by reason thereof the contracts for the repayment of the first and second loans were both usurious, and that in consequence thereof defendant was not entitled to recover any interest on said loans, and plaintiff was entitled to have all payments made by her applied to the payment of the principal, and was entitled to recover from defendant all payments in excess of the principal sum of said loans upon an accounting.

By paragraph 24*c* it was stated that all of said loans were secured by mortgages upon the same properties or some of them, so far as the same were owned by plaintiff, at the time of the respective loans, excepting the last, the loan of $825 on April 22, 1909, which was also secured by parcel No. 4, which was bought from the proceeds of said loan at or about the time the loan was negotiated, and that after the first of said loans each successive loan was really an increase of, and an addition to, the original loan of April 30, 1900; the mortgages and obligations made at the time of the procuring of the successive loans being

made in order to stipulate and agree upon the increased amount.

Paragraph III*a* of the amended prayer was to the effect that in stating said account defendant be required to apply all payments upon said mortgages which were made and had theretofore been applied in payment of interest thereon to and upon the principal of said mortgages.

The defendant fully answered said amendments, denying the several averments. Further testimony was taken, and the case treated as submitted, except that briefs were to be filed. In the meantime Judge Collins died. On October 24, 1916, the case came on to be argued before Judge Coumans upon the testimony which had been taken before Judge Collins. Plaintiff's counsel, at that time, against the objection of defendant's counsel, was permitted to testify relative to certain computations claimed to have been made from the books and schedules produced by defendant.

1. It is the claim of the plaintiff that the mortgage was not properly forecloseable by advertisement. There is no doubt of the correctness of the claim that a statutory foreclosure is not adapted to cases where there are conflicting equities, and that these can be properly considered and protected only in a court of equity. But it does not follow that a building and loan association mortgage cannot be properly foreclosed by advertisement. Whether there are conflicting equities in a given case involves the entire question. We think there was nothing to distinguish this particular mortgage from any other given to such association. There is nothing in the statute which forbids such foreclosure. Section 10007, 2 Comp. Laws 1915.

Such right is expressly granted by the general statute relating to foreclosures by advertisement, where there is a power of sale. Section 14949, 3 Comp. Laws 1915; *Gage* v. *Sanborn*, 106 Mich. 269 (64 N.

W. 32); *Northern Michigan Building & Loan Ass'n v. Fors*, 190 Mich. 69 (155 N. W. 736).

There is no more necessity for an accounting in case of such a loan than in any other case where money is borrowed and partial payments made from time to time. Many such sales have been made in the State, and many titles depend upon the validity of such foreclosures. There is no merit in the claim.

Should parcels 3 and 4 have been sold as one parcel? This involves a question of fact. It is undisputed that this property was not occupied and used as one parcel at the time of the sale, and had not been for a number of years. The property had not been used as a laundry for a number of years prior to the foreclosure, and the boiler and all laundry machinery had been removed, and the temporary building taken down. During most of this intervening time parcel 4 was rented to the Jennison Hardware Company and used by it for storage, in connection with its business. The laundry building proper was rented to another tenant, and used as a secondhand store. It also appears that parcel 4 was not covered by any of the other three mortgages, while all of the other property was. In view of these facts, and under the statute and authorities cited by plaintiff, the sale was properly made in parcels.

Was the sale void because the right of way in the alley was not specifically sold and described in the sheriff's deed? We do not understand how plaintiff has any cause for complaint in this regard. If the easement was of value, and was not sold, it still belongs to her, free from the mortgage, which was satisfied by the sale. But it seems clear that this easement was appurtenant to the dominant estate, and a description of it was unnecessary, and that it was effectually conveyed as appertaining to the lands described.

"Where an easement is annexed or appurtenant to land, it passes as an appurtenance, with a conveyance or devise of the dominant estate, and need not be specifically mentioned in the deed or will." 14 Cyc. p. 1184.

See, also, *Walz* v. *Walz,* 101 Mich. 167, 170 (59 N. W. 431) ; *Lathrop* v. *Elsner,* 93 Mich. 599 (53 N. W. 791) ; *Smith* v. *Dresselhouse,* 152 Mich. 451 (116 N. W. 387) ; *Bean* v. *Bean,* 163 Mich. 379, 397 (128 N. W. 413).

As the notice and the deed covered both the land and its appurtenances, both were sufficient to include the easement.

Was defendant's purchase fair and in good faith? The mortgages were all of record in the office of the register of deeds. If no information was given of prior mortgages, the plaintiff was not injured thereby. The giving of such information would, of necessity, tend to lower the price, and not raise it. The fact is that only Mr. Webster, the secretary of defendant, and the deputy sheriff were present at the sale.

Should the notice of foreclosure have alleged the existence of the prior mortgages? We know of no such requirement or practice. It is urged that the notice should have advertised the sale of an equity of redemption. But plaintiff did not have a mere equity of redemption in this land, because the prior mortgages had not been foreclosed. She was still the owner of the legal title. Counsel for plaintiff quotes from 27 Cyc. pp. 1468, 1469, but fails to quote the preceding sentence:

"If the notice attempts to describe the state of the title, it must be done with exactness."

Was there an excessive amount claimed in foreclosure notice? There is considerable controversy between counsel as to what is properly before the court

upon this subject. It is apparent from the original bill that plaintiff claimed the amount demanded was excessive and asked for an accounting because certain large payments specified in the bill were not credited to plaintiff and entered upon the passbook, as it was claimed they should have been. .Plaintiff now urges under this subdivision that the amount stated in the notice was excessive because of errors in the passbook entries, due to improper methods of computation. It is said by defendant that the bill gives no intimation of such a claim, and that it was not made an issue on the taking of proofs. It does appear that upon the final appearance of the parties before Judge Coumans counsel for plaintiff asked leave to submit, as a part of his argument,' certain computations that he had prepared covering each loan. He was sworn as to their correctness, and the computations were submitted. We think that this was within the discretion of the circuit judge. These computations deal with small fractions. We have examined the statements and computations with care, and are of the opinion that they have to do with fractions of a cent, and that it was practically impossible to figure out the weekly rates so that the total of a period of years will exactly equal 7 per cent. It will sometimes be a trifle more, and sometimes a trifle less. In any event it was a small sum arising from the use of a common method of computation, and should be disregarded. It seems to us that, if the maxim, *"de minimis non curat lex,"* should ever be applied, it should be applied here. As illustrating the character of the claims, it is urged that the notice of sale was published 13 times, and it is said 12 times were sufficient and a corresponding reduction should be made in the advertising charge. The authorities cited in plaintiff's brief do not support the statement that an excessive claim in the amount due in the notice voids the foreclosure.

"A mortgage sale is not necessarily invalid because more is claimed than is in fact due (*Klock* v. *Cronkhite*, 1 Hill [N. Y.], 109), provided the claim is in good faith (*Jencks* v. *Alexander*, 11 Paige [N. Y.], 619). The excessive claim would be a circumstance only of more or less importance according to its magnitude, or apparent want of good faith, if attempt was made to redeem afterwards." *Millard* v. *Truax*, 50 Mich. 343 (15 N. W. 501).

See, also, *Damon* v. *Deeves*, 62 Mich. 465 (29 N. W. 42) ; *Emmons* v. *Van Zee*, 78 Mich. 171, 175 (43 N. W. 1100) ; *First State Bank* v. *Day*, 188 Mich. 228, 236 (154 N. W. 101) ; 27 Cyc. p. 1469.

The period of redemption had not expired when the bill was filed, and when the period was about to expire defendant entered into a stipulation extending the period of redemption until 30 days after the decree below. Unless the sale is to be set aside as void, the plaintiff's right to redeem must be held to have expired.

Was plaintiff entitled to an additional credit of $1,-000 from the proceeds of the sale of the laundry to Bedworth and McQuater? This presents purely a question of fact, upon conflicting testimony. We shall not repeat the testimony here, but content ourselves with saying that a careful examination of the evidence leads us to the conclusion that the plaintiff has not sustained the burden of proof resting upon her, and we agree with the conclusion of the court below.

It is claimed that the mortgage was usurious, and that therefore plaintiff is entitled to have all interest payments applied on the principal of the several loans.

We are satisfied from the evidence that there was no intention to collect a higher rate of interest than the law allowed—no device or scheme on the part of defendant to collect usury. To constitute the charge of usury, there must be an intent to do something which is in violation of the statute. *Green* v. *Grant*,

134 Mich. 462, 467 (96 N. W. 583) ; *Becker* v. *Headsten,* 137 Mich. 478 (100 N. W. 752) ; *Archibald* v. *Thomas,* 3 Cow. (N. Y.) 284; 39 Cyc. pp. 919, 933, 969, 970.

"Where the amount of interest erroneously allowed is insignificant, it has been held, under the doctrine of *de minimis,* not to require correction." 22 Cyc. p. 1570.

Plaintiff claims that mortgages 1 and 2 are usurious on the ground that the defendant, instead of allowing competitive bidding for the funds of the association, established a fixed premium, which all applicants were required to pay. This claim could not affect the validity of this foreclosure, unless mortgages 1 and 2 have been overpaid, and such overpayment can rightfully be applied on this mortgage; the provision relative to competitive bidding having been repealed before this mortgage was executed.

There is no controversy as to the rule established by the cases cited by plaintiff. In our opinion, the plaintiff has wholly failed to prove that the defendant's funds were not offered to the highest bidder. In fact, there is, in our opinion, a clear preponderance of the evidence upon this subject in favor of the defendant's claim. We shall not further discuss the question.

Finally, it is claimed that all of these mortgages were usurious because each contained a clause that the borrower should pay any tax assessed upon the mortgage, while the loan itself bore interest at the highest legal rate. This clause, we think, was mere surplusage, because the mortgages held by these associations are, and always have been, exempt from taxation. Section 10011, 2 Comp. Laws 1915; *National Loan & Investment Co.* v. *City of Detroit,* 136 Mich. 451 (99 N. W. 380).

The question here presented is controlled by *Union*

*Trust Co.* v. *Radford,* 176 Mich. 50 (141 N. W. 1091). That case presented the question whether the mortgages of the trust company were exempt from taxation. It may be said that was the only question on both the original and the rehearing. Here that question is settled by the statute and the case cited.

After a careful examination of this somewhat intricate record, we are of the opinion that the learned chancellor reached the correct conclusion, and the decree of the court below is affirmed, with costs to the appellee.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.