*A. J. Boone*, for the appellant.

## HOPKINS v. JONES.

MORTGAGES—FORECLOSURE BY STATE—STATUTES CONSTRUED.—The summary foreclosure of school fund mortgages, which were executed to the State prior to 1852, and the sale of the mortgaged property, should be conducted according to the law in force at the time the contract was made.

STATUTORY CONSTRUCTION.—Statutes must be construed prospectively, unless they clearly import a different intention on the part of the legislature.

POWER OF CONGRESS OVER CONTRACTS BETWEEN CITIZENS OF A STATE.—As to the power of Congress to enact laws impairing the obligation of contracts between the citizens of a State, see the opinion at length.

Hopkins *v.* Jones.

APPEAL from the *Madison* Circuit Court.

PERKINS, J.—A mortgage and note were executed as follows:

" We, *Lemuel Kinyon* and *Zelpha Kinyon,* of the county of *Madison,* in the State of *Indiana,* do assign over and transfer to the State of *Indiana,* all the following described pieces of land, to-wit: the east half of the south-east quarter of section 5, in township 21, north of range 8 east, 20 acres in the south-east corner excepted, containing 60 acres, more or less, which we declare to be mortgaged for the payment of 141 dollars and 14 cents, with interest, at the rate of 7 per cent. per annum, payable annually in advance, according to the conditions of the note hereto annexed.

" In testimony whereof we have hereunto set our hands and seals this 24th of *January,* 1848.

" L. KINYON, [SEAL.]

" ZELPHA KINYON, [SEAL.]

" Attest: *Daniel Pickard.*"

" I, *Lemuel Kinyon,* promise to pay to the State of *Indiana,* on or before the 24th day of *January,* 1853, the sum of 141 dollars and 14 cents, with interest thereon, at the rate of 7 per cent. per annum, payable annually in advance, commencing on the 24th day of *January,* 1848; and do agree, that in case of failure to pay any installment of interest, the said principal sum shall become due, and collectable, together with all arrears of interest; and on any such failure to pay principal or interest when due, 5 per centum damages on the whole sum shall be collected, with costs, and the premises mortgaged may forthwith be sold by the auditor of *Madison* county for the payment of such principal sum, interest, damages and costs. L. KINYON."

The mortgage was duly acknowledged and recorded.

A default in payment of interest, and a sale of the land upon the mortgage, occurred.

When the mortgage and note in question were executed, it is agreed by counsel that the law provided that notice of sale should be given 60 days before a sale of the mortgaged premises should take place, on account of a default of payment of interest, &c., on the mortgage.

. Before the sale upon the mortgage took place, a new law had been enacted, touching loans, notes, &c., which provided for notice of sale to be given no more than 21 days before sale, and a notice of 60 days was not given in this case. It is contended that the sale was void, because the notice of sale required by the statute at the date of the mortgage was not given, and this is the only question in the cause.

1. Did the statute, reducing the length of time of notice, impair the obligation of the contract, supposing it operative upon it?

If it did, the statute was void for want of power in the State to enact such a statute.

The inviolability of contracts is most carefully guarded in the *United States*. It is probably a power, admitted to exist in unlimited governments, to impair or abrogate contracts, between the subjects of such governments, by legislation. Hence, the provision in the Constitution of the *United States* that no one of the States composing the Union should enact such a law. Hence, also, as there is no such restriction on the power of the Government of the *United States*, in the Federal Constitution, it may be, though we do not assert the proposition, that Congress might enact a statute of that character, to be operative within the sphere of that government; but such act of Congress, if passed, could not, unless it were a general bankrupt law, operate upon the domestic contracts between citizens of a State; because the jurisdiction of the General Government does not extend, as a general proposi

tion, to that subject. That power was not ceded to it by the States at the adoption of the Constitution. The prohibition upon the States to exercise it, is a concession that it had not been granted away to the Federal Government. Such an act of Congress could only operate upon contracts executed within the sphere of jurisdiction of the Federal Government; such as contracts in the District of *Columbia*, &c., or between itself and its officers, or contractors, &c. The *United States* is a government over specified subjects and objects, and over persons, as connected therewith, within a certain sphere; and its legislative power extends only to those; and its executive and judicial powers extend *pari passu* with, and, as a general proposition, are bounded by the same limits as the legislative. This follows from the fundamental fact that the Government of the *United States* is one of granted powers, which are circumscribed by the Constitution containing the grant. *Griffin* v. *Wilcox*, 21 Ind. p. 370, and cases cited; *Warren* v. *Paul*, and *Thayer* v. *Hedges*, ante, pp. 276, 282.

Those powers do not extend to the interference with purely domestic contracts between citizens of a State, except through a general bankrupt law. For example, the *United States* could not provide by law that State Courts should not regard as valid any contracts between citizens of a State, unless they were in writing; though Congress may enact a statute of frauds to operate on contracts falling within the jurisdiction of the *United States* Government.

Domestic contracts, then, between the citizens of *Indiana* can not be impaired, except by a bankrupt law, as before mentioned, either by the Government of the State or *United States;* not by the former for want of power, in the abstract, to enact such a law; not by the latter for want of jurisdiction over the subject matter.

The obligations of a contract exist between the parties to it, and may be said to consist in the mutual duties of per-

forming its requirements. Those obligations might be impaired by the government, if it had the power, in two ways, viz: by expressly abrogating the contract, releasing parties from performance; or, secondly, by depriving the parties of all means to enforce its obligations, or furnishing to them the power and means of enforcing the contract before due, or in a manner variant from its terms.

In the case at bar, if the State has attempted to impair the obligation of the contract, it has done so by expediting its enforcement, after breach by one of the parties, not by allowing it to be enforced before the stipulated time.

What were the obligations of the contract disclosed in this suit? There was an obligation on the side of the creditor to wait till the money, named in the securities appearing in the case, became due, before attempting to enforce its payment; and an obligation on the part of the debtor to pay that money when due, and to permit the land in question to be sold forthwith, if he failed to make the payment.

The contract did not provide for the manner of sale, but an existing statute of the State did. Whether the parties could have prescribed, by contract, a mode different from that prescribed by statute, it is not necessary now to decide, and the authorities upon the point are conflicting. It is true, generally, that what pertains to the *right* between the parties may be regulated by contract, what to the remedy may not, but must be left to the law, though this proposition is true only as applicable to executory stipulations, not to those accompanied by a power of execution, coupled with an interest. But where the line is between the right and the remedy, is not easily defined. See 2 Par. Mar. Law, p. 481–2, notes. For authorities in this State, see *Berry* v. *Bates*, 2 Blackf. 118; *Low* v. *Blair*, 6 *id.* 282; *Mendenhall* v. *Lenwell*, 5 *id.* 125; *The Eagle Ins. Co.* v. *The Lafayette Ins. Co.*, 9 Ind. 443, and the conflicting cases cited on page 448; *Conrad* v. *Johnson*, 20

Ind. 421. In this latter case, it was held that where the agreement of submission to arbitration designates a time, on or before which the award shall be delivered, it must be delivered according to the agreement, though it designates a time at variance with that designated by the statutes in such cases.

We incline to think the statute, mentioned in the first part of this opinion, prescribing the length of time of notice of sale, after default, in cases like that at bar, related to the remedy, though we do not decide the point; and it is settled that the remedy may be altered by the Legislature, if a reasonable one be left remaining. *Scobey* v. *Gibson*, 17 Ind. 573. And it is further settled, that an act of the legislature, giving a more efficient remedy for the enforcement of the obligation of a contract after breach, does not impair its obligation. *Wood* v. *Kennedy*, 19 Ind. 68; *Maynes* v. *Moore*, 16 Ind. 116; *Pierce* v. *Mills*, 21 Ind. 27. See *Price* v. *Huey*, at this term. Also, 1 Ind. 456; 2 *id.* 107, 266; 9 Barb. (N. Y.) 482; 1 Hill 324.

2. But we think the act of 1852, shortening the time of notice, not operative, in this particular, on existing contracts. It is a maxim of the law that statutes must be construed prospectively, unless they plainly import a different intention on the part of the legislature. In this case, such intention does not appear by the act of 1852, and that act does not, in terms, apply to existing mortgages. 1 R. S. 439. Shortening the time of notice would curtail a privilege in the matter of time for payment before sale, and is a fact proper to be considered in construing the statute. The time of notice was a right under the statute, so long as it was in force, and it should not be taken away by mere implication. We think sales upon mortgages, executed prior to the act of 1852, should proceed according to the prior law, under section 2 of the general repealing act. 1 G. & H. 535.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*McDonald & Roache*, for the appellant.

*Walter March*, for the appellee.