GRAND RIVER AVENUE CHRISTIAN CHURCH v. BERK-
SHIRE LIFE INSURANCE CO.

1. CONSTITUTIONAL LAW — MORTGAGES — FORECLOSURE — PERSONAL
NOTICE—STATUTES—REPEAL.
    Act No. 16, Pub. Acts 1926, Ex. Sess., repealing Act No. 383,
    Pub. Acts 1925, requiring personal notice of foreclosure of
    mortgage by advertisement, changed remedy merely, and
    therefore did not deny mortgagor due process of law or im-
    pair obligation of contract in regard to mortgage executed be-
    fore repealing statute was enacted.

2. SAME—POSSESSION—REMEDY.
    Provisions affecting possession of mortgaged premises are mat-
    ters of substance, but those affecting the remedy in order to
    secure possession may be changed from time to time.

3. Mortgages—Foreclosure by Advertisement—Personal Notice—Repeal of Statute.

In foreclosure of mortgage by advertisement after repeal of Act No. 383, Pub. Acts 1925, by Act No. 16, Pub. Acts 1926, Ex. Sess., it was not necessary to serve notice of foreclosure sale personally or by registered mail on occupants of premises (3 Comp. Laws 1929, § 14427).

4. Same—Sale as Entirety Proper Where Lot Lines Disregarded and Separate Sale Impossible Without Lessening Security.

Where mortgaged property consisting of several city lots was improved by building thereon without regard to lot lines, so that it could not be sold separately without lessening the value of the security, it was properly sold as entirety (3 Comp. Laws 1929, § 14431).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 14, 1931. (Docket No. 73, Calendar No. 35,513.) Decided June 1, 1931.

Bill by Grand River Avenue Christian Church, a Michigan corporation, against Berkshire Life Insurance Company, a Massachusetts corporation, to set aside mortgage foreclosure proceedings. Bill dismissed. Plaintiff appeals. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

Butzel, C. J. On November 27, 1925, plaintiff, a corporation organized for ecclesiastical purposes under the laws of this State, borrowed from defendant Berkshire Life Insurance Company, a Massachusetts corporation, the sum of $75,000 to complete the construction of a new church building and stores attached thereto. In order to secure the loan, plaintiff gave defendant a mortgage on the property on which the building under construction, the old church building, an oil station, etc., were situated. Its description is as follows:

"Lots numbered one (1), two (2), three (3) and four (4) of Allendale Subdivision of the southerly ten (10) feet of lot four (4) and lots seven (7), eight (8), eleven (11) and twelve (12) of Tireman's Subdivision of part of lot five (5) of Subdivision of quarter sections 50, 51 and 52, Ten Thousand Acre Tract and fractional section 3 town two (2) south range 11 east, Greenfield, according to the plat thereof recorded in the office of the register of deeds for said county of Wayne in liber 23 of plats on page 70, said premises being located in the city of Detroit, Wayne county, Michigan."

The mortgage contained the usual power of sale in the event of default in payments. Plaintiff defaulted in its payments and foreclosure proceedings by advertisement were instituted. On November 12, 1928, the premises were sold as an entirety to defendant for the amount due on the mortgage. Exactly one year later, on the last day of redemption from sale, plaintiff filed a bill asking that the foreclosure proceedings be set aside and the sale held for naught. Plaintiff claims it is entitled to the relief sought, because (a), there was no service of notice of foreclosure on the occupants of the premises as provided for by the law in force at the time the mortgage was given; and (b), the property was not sold in separate parcels but as an entirety.

(a) At the time of the execution of the mortgage, the statute providing for foreclosure by advertisement (Act No. 383, Pub. Acts 1925), required personal or registered mail service of the notice of foreclosure upon occupants of the mortgaged premises. This act was approved May 27, 1925, and went into effect August 27, 1925, two months prior to the execution of the mortgage. The act, however, was short-lived and was repealed at an extra session of the legislature by Act No. 16, Pub. Acts 1926, which, according to its provisions, took immediate effect.

The sole purpose of this act was to repeal Act No. 383, Pub. Acts 1925, and in referring to it, provided that:

"Any proceedings to foreclose a mortgage since said act became effective shall not be held invalid because of failure to comply with any provision thereof."

Plaintiff asserts that, notwithstanding said repealing act, it was nevertheless absolutely necessary to comply with the provisions of the repealed act in order to foreclose a mortgage given while said act was in full force and effect; that said Act No. 383, *supra,* gave a substantive right to mortgagors in providing that occupants of premises must be duly served either personally or by registered mail with notice of foreclosure sale 30 days before the date of the sale. It is admitted that no such notice was given. The record shows that plaintiff was duly advised by numerous letters that foreclosure proceedings were about to be begun, and later was informed when the equity of redemption would expire. Plaintiff does not claim surprise, lack of knowledge, or any fraudulent conduct on the part of the defendant. It insists, however, that foreclosure by advertisement is a harsh remedy provided by statute and that any deviation from the prescribed procedure at the time the mortgage is given vitiates the entire proceedings; that the right to be informed by service of the notice of foreclosure proceedings is a substantial one that accrued at the time that the mortgage was given and that such right could not be abrogated by statute; and that in taking away this right, the repealing statute was unconstitutional in that it deprived plaintiff of its rights without due process of law, impaired the obligation of the contract, and was an *ex post facto* law. The procedural change in doing away with service of notice

made a change in the remedy but did not deprive plaintiff of any substantial right. The foreclosure proceedings were legal and proper. It was not necessary to follow the provisions of the repealed law in regard to the remedy.

Plaintiff relies mainly on the case of *Cargill* v. *Power,* 1 Mich. 369. In that case, the legislature sought to cut down the time of equity of redemption from two years to one year, and it was held that this could not be done so as to effect the foreclosure of a mortgage executed prior to the time that the act became effective. In the instant case, however, the change was merely in procedure. No rights have been taken away from plaintiff. The remedy merely has been changed. Provisions affecting possession of mortgaged premises are matters of substance, but those affecting the remedy in order to secure possession may be changed from time to time. In *Sturges* v. *Crowninshield,* 4 Wheat. (U. S.) 122, 200, the court said:

"Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

In *Mundy* v. *Monroe,* 1 Mich. 68, it was said:

"It seems to be conceded by all who have written on this subject, that where the law sought to be invalidated affects the remedy only, and does not touch the right of the party secured by the contract, it is not repugnant to that provision of the Constitution which declares that no State shall pass any law impairing the obligation of contracts."

In *State Savings Bank* v. *Matthews,* 123 Mich. 56, it was held that the statute which amended the mortgage foreclosure law by authorizing a sale after the lapse of six months (instead of one year as theretofore provided) from the filing of the bill, but al-

lowed the mortgagor six months from the time of sale to redeem at any time, affected the remedy only. It did not impair the obligation of the contract in existing mortgages foreclosed under the amended act. The court quoted the following rule, laid down in *Tennessee* v. *Sneed*, 96 U. S. 69:

"The rule seems to be that in modes of proceeding and forms to enforce the contract the legislature has the control, and may enlarge, limit, or alter them, provided that it does not deny a remedy, or so embarrass it with conditions and restrictions as seriously to impair the value of the right."

For other cases providing that the remedy as to existing causes of action may be changed provided that they do not create, enlarge, or destroy any substantial rights, see *Judd* v. *Judd*, 125 Mich. 228; *C. H. Little Co.* v. *L. P. Hazen Co.*, 185 Mich. 316. In *Conley* v. *Barton*, 260 U. S. 677 (43 Sup. Ct. 238), the court, in holding that a law requiring the filing of an affidavit within three months after the expiration of the redemption was remedial and valid as to mortgages executed prior to the enactment of the law, said:

"It is recognized that the legislature may modify or change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts if a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract."

In *James* v. *Stull*, 9 Barb. (N. Y.) 482, the law affecting the method of foreclosure by advertisement was changed after the mortgage was given by shortening the length of the time of publication from 24 weeks to 12 weeks. The court, in holding that the constitutional rights of the mortgagor were not violated, said:

"To hold this act unconstitutional would be to deny to the legislature, virtually, all power to legislate in regard to the practice of courts and proceedings on the part of creditors, to collect debts;— a power which must always exist and be frequently called into exercise in every commercial and advancing community, to meet peculiar exigencies, and keep the organization of courts and their proceedings in harmony with the demands of business and the substantial progress of society."

To like effect are *Strand* v. *Griffith,* 63 Wash. 334 (115 Pac. 512); *Hopkins* v. *Jones,* 22 Ind. 310. In the instant case, it was not necessary to serve the notice of foreclosure sale personally or by registered mail on the occupants of the premises, and the repeal of Act No. 383, Pub. Acts 1925, in no way affected plaintiff's rights.

(b) The other question raised by plaintiff is whether the mortgaged premises should not have been sold in separate parcels instead of as an entirety. Section 14431, 3 Comp. Laws 1929, provides as follows:

"If the mortgaged premises consist of distinct farms, tracts, or lots not occupied as one parcel, they shall be sold separately, and no more farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale, with interest and the costs and expenses allowed by law but if distinct lots be occupied as one parcel, they may in such case be sold together."

The description of the plot and the individual lots can best be seen from the map (Exhibit 8), which is appended to this opinion. The property consists of four lots situated on the southwest side of Grand River avenue at the corner of the north side of Allendale avenue. Lots 1 and 4 are triangular in shape; lots 2 and 3 are both rectangular, except

that a small portion of lot 3 is lopped off. The lots adjoin one another and constitute one piece of property, which fronts 157.06 feet on Grand River avenue, 137.31 feet on Allendale avenue, 116.77 feet on the alley in the rear, and 151.02 feet on the most westerly side.

In erecting the buildings and improvements upon the property, the original lot lines have been completely lost sight of. Each building or improvement is situated on parts of more than one lot and none of them occupy the whole of one or more lots. The old church of plaintiff with the entrance facing on Allendale avenue, and a walk leading to the street, occupies parts of lots 2, 3, and 4. The new church and stores occupy parts of lots 1, 2, and 3. The vacant plot occupies parts of lots 2, 3, and 4. The walk from Allendale avenue to the old church also leads to the new church. The oil station occupies parts of lots 3 and 4. The stores fronting on Grand River avenue on the northwesterly side of the lot, although separated from the new church by a fire wall, are part of the same structure. The most westerly ten feet or thereabouts of the store building consists of a long hallway leading into the new church with a rather elaborate front entrance on Grand River avenue. The upper floor of the store building is not occupied, but may be rented for general purposes. The larger part of the basement under the stores is used by the tenants of the stores. The rear portion of the basement, however, is walled off and used by the church as a kitchen.

At the time the mortgage was given, the old church and the oil station stood on the premises. The oil station was not occupied by the tenant now in possession. The tenant of the oil station was required to pay taxes on the property occupied by it, the remaining property being used for church

purposes and exempt from taxation. There is situated on the oil station a small concrete one-story building, with the gasoline pumps in front and oil and gasoline tanks sunk below the ground level. The intake pipes for the gasoline are in the rear of the property. The oil station is fenced off by a lattice fence. It is uncertain from the manner in which it is occupied just what property is leased to the oil station. The city tax receipts would indicate that it has a frontage of 90 feet on Grand River avenue, 53 feet on Allendale avenue, and 18 feet on the northwest side. The lattice fence appears to be 56 feet from Allendale avenue, but the lower court found that the station used some of the property in the rear of the fence for its intake pipes to the storage plants; that the lease covered only 76 feet on Grand River avenue and 45 feet on Allendale avenue; that it was offered by the plaintiff's real estate agents as a piece having a frontage of 75 feet on Grand River avenue. A former lease submitted to the tenants calls for 78 feet on Grand River avenue. It is thus impossible to tell just exactly what should be included for the oil station.

The testimony further shows that if the shallow piece of property fronting on Grand River avenue and used by the oil station were treated as a separate parcel and cut off from the deep lots, the value of the remaining property would be diminished much more than the amount realizable from the sale of the oil station; that the only way of realizing the greatest amount from the property would be to combine the oil station property with that in the rear, in accordance with the plan under which the property was subdivided and as described in the mortgage; that the property occupied by the oil station is irregularly shaped, unplatted, and covers parts of several lots, and the exact amounts that

should be allotted to the oil station are indefinite. Even were plaintiff's theory correct, just what to do with the vacant piece of property in the rear of the oil station remains an uncertainty. Whether it should be sold as a separate parcel or in conjunction with the oil station or with the church, we would be unable to determine from the record. The difficulty would become still greater if it were necessary to sell as a separate unit the store building, part of which consists of the main entrance of the new church.

Plaintiff stresses its claim that it was the legal duty of defendant to sell the oil station separately, but pays no attention whatsoever to the lines of the lots as described in the mortgage and plat. The testimony shows that the sale of parts of the several lots described in the mortgage would most seriously impair the value of the remaining property, realize less on the mortgage debt, and change the security as given by the mortgagor. It was further shown that there was another oil station in the vicinity and that the corner was far too valuable to be used permanently for an oil station. If plaintiff is correct in its theory, then the building and leasing of a cheap lunch stand, shoe shining parlor, or almost any other kind of temporary structure, commonly known as a "taxpayer" on the front part of a corner lot, without any regard to the lot lines as described in the mortgage and plat, would obligate the mortgagee to sell such front part of the property for whatever could be obtained for it and the rear part for far less than it would be worth if combined with a part of the property having a valuable frontage. We can readily see how the contract rights of the mortgagee would be thus seriously impaired by lessening the value of the security. We are not con-

sidering a case where a lot or lots used and leased for distinct purposes in their entirety were required to be separately sold. Many cases are cited by plaintiff where the situation is entirely different; they are not applicable to the present case. We believe that the rule laid down by Mr. Justice FEAD in the case of *Security Trust Co.* v. *Sloman,* 252 Mich. 266, is the correct one and is controlling in the present situation. In that case, the question was a practical one. The court said:

"While a mortgagor's right of redemption of part of the premises is to be safeguarded, it is not superior to the right of the mortgagee to collect the debt. We think the premises constituted one known parcel, and the sale as such was proper."

It is claimed that this latter case was a foreclosure in equity and not at law under 3 Comp. Laws 1929, § 14627. It will be found, however, that the provisions in regard to sale, while not identical, are similar. Distinctions without differences are pointed out to us. The practical application in each case depends upon the facts. In the instant case, the only practical and proper way in which the property could be sold was to follow the lines of the lots as described in the mortgage, and, inasmuch as the lines had been obliterated by the improvements, it was proper to sell the property as an entirety.

The decree of the lower court dismissing the bill is affirmed, with costs to defendant.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.