SWEET AIR INVESTMENT, INC v KENNEY

Docket No. 265691. Submitted April 10, 2007, at Lansing. Decided May 15, 2007, at 9:00 a.m. Leave to appeal sought.

Sweet Air Investment, Inc., brought an action in the 2-A District Court against Linda L. Kenney and Frank J. DiSanto, the latter individually and as the trustee and beneficiary of the Frank J. DiSanto Revocable Living Trust. The plaintiff's predecessor had instituted foreclosure proceedings on property owned by the trust and acquired the property at a foreclosure sale. The action sought possession of the property, eviction of the defendants, restitution, and an injunction against damage to the property. The defendants filed counterclaims that exceeded the district court's jurisdiction, and the parties stipulated removal to the Lenawee Circuit Court, where the plaintiff and the defendants moved for summary disposition. At the hearing on the plaintiff's motion, the circuit court, Timothy P. Pickard, J., ordered an immediate bench trial under MCR 2.116(I)(3) and set aside the foreclosure sale after concluding that the property consisted of two distinct parcels that were occupied separately. The plaintiff appealed.

The Court of Appeals *held*:

1. The circuit court erred by holding that the plaintiff's predecessor was required to sell the two parcels separately at the foreclosure sale. MCL 600.3224 requires that, if mortgaged premises consist of distinct lots that are not occupied as one parcel, those distinct lots must be sold separately. The proper inquiry to determine if the property consists of one parcel, however, is whether, at the time of the foreclosure sale, the property was held, treated, occupied, or used as one parcel. Property that is mortgaged as a single parcel may be sold as a single parcel, and the mortgagor has the burden of proof to establish that the lots were occupied as more than one parcel. MCL 600.3224 requires the sale of individual parcels of property covered by a single mortgage only when the parcels are in fact physically separated and not interconnected or integrated in their use or occupancy. In this case, the property has a main parcel used as the defendants' residence and another parcel with a separate address used by caretakers who occupy a caretaker's home for the purpose of maintaining the

entire property. The two parcels are physically connected and accessible to each other by a bridge, and the parcel occupied by the caretakers is an integral part of the main parcel and integral to the functioning of the property's primary use. Dividing the property would impair the value of the property as a whole. The fact that the property has three different tax identification numbers involving overlapping taxing jurisdictions does not demonstrate that the parcels are separate and distinct.

2. The defendants' claim of inadequate notice of the foreclosure sale is without merit. Michigan law allows adjournment of a foreclosure sale from week to week without the need to republish a notice of adjournment every week. A defect in notice renders a foreclosure sale voidable, not void. The defendants cannot show prejudice from any alleged defect. They did not timely challenge the validity of the foreclosure sale and made no effort to redeem or take any action until well after the redemption period expired.

3. The defendants' claims concerning excessive attorney fees and the plaintiff's including a prepayment premium do not warrant setting aside the foreclosure sale. A mortgage sale is not necessarily invalid because more is claimed than is actually due if the claim is made in good faith. The amount claimed here is not significant enough to warrant setting the foreclosure sale aside, and the defendants made no effort to redeem, as they must do to raise a claim of bad faith.

4. The defendants' claim of unjust enrichment is also without merit. While the defendants have maintained the property, they have been in possession of it and have had the use and enjoyment of it while maintaining it. The defendants defaulted on their mortgage, and the plaintiff has been paying the taxes and insurance and carrying the interest on the mortgage. It is not inequitable to deny the defendants recovery for their maintenance of the property.

5. The circuit court erred by converting the hearing on the plaintiff's summary disposition motion into a bench trial. While MCR 2.116(I)(3) allows a court to do so when a summary disposition motion is based on MCR 2.116(C)(1) through (7), the plaintiff brought its motion under MCR 2.116(C)(10). The plaintiff should have been afforded notice of the bench trial and an opportunity to present evidence.

Reversed and remanded for entry of a judgment of possession in the plaintiff's favor.

MORTGAGES — FORECLOSURE BY ADVERTISEMENT — SALES OF SINGLE OR MULTIPLE PARCELS.

Mortgaged premises consisting of distinct farms, tracts, or lots that are not occupied as one parcel must be sold separately at foreclosure; to determine if the property consists of one parcel, the proper inquiry is whether, at the time of the foreclosure sale, the property was held, treated, occupied, or used as one parcel; Michigan foreclosure law requires the sale of individual parcels of property covered under a single mortgage only when the parcels are physically separated and not interconnected or integrated in their use or occupancy (MCL 600.3224).

*Dykema Gossett PLLC* (by *Thomas M. Hanson* and *Krista L. Lenart*) for the plaintiff.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael H. Perry* and *Joshua S. Smith*), for the defendants.

Amicus Curiae:

*Trott & Trott, P.C.* (by *Jeffrey D. Weisserman*), for Michigan Mortgage Lenders Association.

Before: SERVITTO, P.J., and TALBOT and SCHUETTE, JJ.

PER CURIAM. Plaintiff appeals as of right the trial court's order denying its motion for summary disposition. Plaintiff also appeals as of right the trial court's conversion of the July 1, 2005, hearing on plaintiff's motion for summary disposition into an immediate bench trial under MCR 2.116(I), at which the trial court set aside the foreclosure sale on the basis that the property should have been sold in two different parcels rather than one. We reverse and remand for entry of a judgment of possession in plaintiff's favor.

I. FACTS

The property in question consists of about 66 acres located on Marr Lake. The buildings on the property

include an 8,000-square-foot main house, five outbuild-ings, dog kennels, and a caretaker's home. The legal descriptions in the deed to the entire property indicate that there are five different parcels. The property has three different tax identification numbers and is cov-ered by one insurance policy.

Defendant Linda L. Kenney purchased the entire property on January 12, 1993, from the Campfire Girls. Later in 1993, Kenney conveyed the property to herself and defendant Frank DiSanto as tenants by the en-tirety. In 1995, defendants conveyed the property to the Frank J. DiSanto Revocable Living Trust (Trust), of which DiSanto is the trustee. Kenney has used the property's main house as her residence and has raised show dogs on the property since 1995. Both Kenney and DiSanto reside in the main house at 300 Marr Lake Road (main parcel). The caretakers for the property reside on the parcel with the address of 750 Marr Lake Road (caretaker parcel). A bridge that crosses a small creek connects the main parcel and the caretaker par-cel. The caretakers and defendants have an arrange-ment whereby the caretakers provide services in lieu of paying rent; however, the caretakers pay their own utilities. There was never a written lease agreement between the caretakers and defendants.

On March 15, 2000, the Trust took out a $475,000 loan from Eastern State Bank, and the loan was secured by a mortgage on the property. The legal description of the property in the mortgage consists of the entire 66 acres, as previously outlined. The Trust failed to make its January and February 2001 payments, and Eastern sent a letter on February 15, 2001, notifying DiSanto that the Trust was in default and that it had 30 days to cure before Eastern accelerated the mortgage and fore-closed. DiSanto claims that he did not receive any

letters from Eastern notifying him of the default. DiSanto made no effort to cure, and Eastern instituted foreclosure proceedings by advertisement. On December 20, 2001, Eastern successfully bid the amount of the indebtedness, $591,601.28, at the foreclosure sale and received a sheriff's deed. Eastern then quitclaimed the property to plaintiff, Sweet Air Investments, Inc., a wholly owned subsidiary of Eastern. Under MCL 600.3240, the redemption period expired on January 24, 2003.

Sweet Air filed a complaint in the district court on March 11, 2004, seeking possession of the property, eviction, restitution, and an order enjoining defendants from causing any damage to the property. Defendants filed an answer and a counterclaim asserting several claims in excess of the district court's jurisdiction, and the parties stipulated removal to the circuit court. Plaintiff and defendants filed cross-motions for summary disposition. The trial court visited the property for inspection, with the parties' counsel present and over plaintiff's objections. At the hearing on plaintiff's motion for summary disposition, the trial court converted the hearing into an immediate bench trial under MCR 2.116(I) and held, as a matter of law, that the foreclosure sale should be set aside because the property consisted of two distinct parcels that were occupied separately. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's conclusions of law and equitable decisions. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004); *Webb v Smith (After Second Remand)*, 224 Mich App 203, 210; 568 NW2d 378 (1997). Likewise, "[t]he interpretation and

application of court rules ... present a question of law that is ... reviewed de novo." *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director,* 472 Mich 117, 123-124; 693 NW2d 374 (2005).

### III. ANALYSIS

#### A. PARCELING UNDER MCL 600.3224

Plaintiff argues that the trial court was incorrect in setting aside the foreclosure sale under MCL 600.3224. We agree.

"The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *United States v Garno,* 974 F Supp 628, 633 (ED Mich, 1997), citing *Detroit Trust Co v Agozzinio,* 280 Mich 402, 405-406; 273 NW 747 (1937), and *Calaveras Timber Co v Michigan Trust Co,* 278 Mich 445, 450; 270 NW 743 (1936). MCL 600.3224 provides that

[i]f the mortgaged premises consist of distinct farms, tracts, or lots not occupied as 1 parcel, they shall be sold separately, and no more farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale ....

However, if the distinct lots are "occupied as 1 parcel, they may in such case be sold together." MCL 600.3224.

This Court has stated that MCL 600.3224 is mandatory rather than discretionary. *Cox v Townsend,* 90 Mich App 12, 15; 282 NW2d 223 (1979). The proper inquiry in determining if the property consists of one parcel is whether, at the time of the foreclosure sale, the property was "held, treated, occupied or used" as one parcel. *Id.* at 16. MCL 600.3224 does not require that the parcels be sold separately when doing so would be arbitrary or impractical. *Cox, supra* at 18, citing *Grand*

*River Avenue Christian Church v Berkshire Life Ins Co*, 254 Mich 480; 236 NW 881 (1931). Further, this Court has stated that "[w]hen land is mortgaged as a single parcel, it may be sold as such." *Cox, supra* at 17, citing *Durm v Fish*, 46 Mich 312; 9 NW 429 (1881). Finally, the mortgagor has the burden of proof in establishing that the lots were not occupied as one parcel. *Cox, supra* at 16.

The caselaw interpreting the Michigan parceling statute goes back more than 100 years, and we take this opportunity to examine and clarify the precedents relied on by the parties. Plaintiff first relies on this Court's decision in *Cox*, in which the foreclosed property in question was a 1,100-acre tract used for farming that was acquired through 13 different conveyances over a 12-year period. *Id.* at 13-14. The property consisted of more than 20 different parcels according to the survey map, and the survey certificate's written description showed 4 separate parcels. *Id.* at 18. Further, the property consisted of 13 different tax parcels, and the title examination showed 11 different parcels. The fences that separated the original tracts had been removed, and the current fences separated crop and livestock use. There were four houses located on the property that were rented to nonfarming tenants. *Id.* In holding that the property was properly sold as one parcel during the foreclosure sale, this Court stated that "[w]e are dealing here with a large farm, which by its very nature consists of numerous types of land and may have various houses and outbuildings situated on the property." *Id.* This Court further stated that "[t]here is no reasonable or logical method of dividing the property without adhering to an entirely different use than that made of it by defendants." *Id.*

Plaintiff also relies on *Grand River Avenue Christian Church, supra* at 486-488, in which the mortgagor

claimed that the mortgaged property should have been sold separately because the property contained an oil station and stores leased to various tenants and was, therefore, occupied separately from the mortgagor's church. The stores and the church were part of the same structure, but the oil station was separated from the rest of the property by a lattice fence. *Id.* at 488-489. At the time the property was mortgaged, the tenant of the oil station was not in possession. *Id.* at 488. Further, separating the oil station from the rest of the property would have diminished the value of the property because the property occupied by the oil station was "irregularly shaped" and separating it would have seriously impaired the value of the whole property because it would have isolated the back lots. *Id.* at 489. Our Supreme Court held that the property was properly sold as one parcel and stated that " '[w]hile a mortgagor's right of redemption of part of the premises is to be safeguarded, it is not superior to the right of the mortgagee to collect the debt.' " *Id.* at 491, quoting *Security Trust Co v Sloman*, 252 Mich 266, 271; 233 NW 216 (1930).

In *Security Trust, supra* at 269-270, there were several lots interconnected by railroad tracks and buildings that served several different tenants. The railroad tracts were "an integral part of [the property's] scheme and value." *Id.* at 270. In holding that the property was properly sold as one parcel, our Supreme Court stated that "[a] parcel may be single although divided by a highway or street." *Id.* "The statute contemplates sale by described lots or government divisions, when no intervening cause changes the nature of the parcel, or when parcels are distinct and independent in description, occupancy and use." *Id.* (citations omitted).

Defendants rely on *Lee v Mason*, 10 Mich 403 (1862), to support their claim that the property in this case

consists of two distinct parcels that are occupied separately. However, the mortgaged property in *Lee* consisted of two adjoining parcels and another parcel located more than a mile away. *Id.* at 403. Our Supreme Court stated that "[t]he person claiming under a foreclosure of a mortgage, where the parcels are *separated*, as some of them are here, must fail unless [the statute] is complied with." *Id.* at 405 (emphasis added). Clearly, the case at bar is distinguishable in that the parcels are connected and not physically separated as in *Lee*.

Defendants also cite *Udell v Kahn*, 31 Mich 195 (1875), for the proposition that one must sell detached parcels separately. *Udell* involved the single sale of a "large number of detached parcels . . . ." *Id.* at 198. "There can be no very good reason supposable, why lands will not bring some price separately as well as together, *where they do not lie in one piece*; and the owners cannot be thus deprived of their statutory right to redeem each parcel by itself." *Id.* (emphasis added). *Udell*, like *Lee*, is distinguishable from the present case on the ground that it involved several detached parcels rather than connected parcels.

The caselaw clearly establishes that Michigan courts have interpreted MCL 600.3224 to require the sale of individual parcels of property covered under a single mortgage only when those parcels are in fact physically separated and not interconnected or integrated in their use or occupancy. Defendants attempt to distinguish *Cox*, as well as other cases cited by plaintiff, on the basis that it involved a farm and is, therefore, inapplicable to the present case. We disagree. There is no meaningful distinction between a farm in the traditional sense and a large tract of land that is used to raise show dogs. Also, the plain language of the statute does not make any distinction between "farms, tracts, or lots." MCL 600.3224.

In this case, the two parcels in question are physically connected and are accessible to each other by a bridge. The property was bought, mortgaged, and advertised for sale as one property. Further, the caretakers occupy the caretaker's home for the purpose of maintaining the dog kennels and the entire property. This factor makes the caretaker parcel an integral part of the main parcel and integral to the functioning of the entire property's current primary use, which is to raise show dogs. The unique geography and the fact that the caretaker parcel is an irregular shape do not warrant the conclusion that these are two distinct parcels that are occupied separately. Dividing the property would isolate the caretaker parcel from the highway and impair the value of the property as a whole. Also, according to *Cox*, the fact that the property in question overlaps taxing jurisdictions does not show that the parcels in dispute are separate and distinct. Therefore, the trial court erred in holding that plaintiff's predecessor was required to sell these parcels separately.

### B. INADEQUATE NOTICE

Defendants allege[1] that plaintiff failed to comply with the requirements of MCL 600.3220 by failing to publish notice of the adjournment of the sale from December 13, 2001, until December 20, 2001. We disagree.

MCL 600.3220 provides:

---

[1] Defendants raised several issues in the alternative that were pleaded below but not addressed by the trial court. While defendants argue that we should remand this case for the trial court to address this issue if we reverse the trial court, we have sufficient facts available from the parties' briefs to rule on those issues as a matter of law; therefore, remand is unnecessary for this purpose. "An issue not addressed by the trial court may nevertheless be addressed by the appellate court if it concerns a legal issue and the facts necessary for its resolution have been presented." *Sutton v City of Oak Park*, 251 Mich App 345, 349; 650 NW2d 404 (2002).

> Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and *if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published,* the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned. No oral announcement of any adjournment shall be necessary. [Emphasis added].

Plaintiff published notice of the adjournment of the foreclosure sale to December 20, 2001, at the Lenawee Judicial Building in the city of Adrian. However, the publication that ran in *The Tecumseh Herald* on the dates of November 1, 8, 15, 22, and 29, 2001, stated that the foreclosure sale would be held on December 13, 2001.

This Court has held that "a defect in notice renders a foreclosure sale voidable," not void. *Jackson Investment Corp v Pittsfield Products, Inc*, 162 Mich App 750, 755; 413 NW2d 99 (1987). Under Michigan law, "a party who publishes an initial notice of adjournment may continue to adjourn a foreclosure sale from week to week without having to republish a notice of adjournment every week." *Worthy v World Wide Financial Services, Inc*, 347 F Supp 2d 502, 510-511 (ED Mich, 2004), aff'd 192 Fed Appx 369 (CA 6, 2006); see also 1 Cameron, Michigan Real Property Law (3d ed) § 18.81, pp 747-748. In *Worthy, supra* at 505, 511, the mortgagor was unable to produce the money to redeem before the redemption period expired and did not file a complaint until six months after the foreclosure sale. In granting summary disposition for the mortgagee, the United

States District Court for the Eastern District of Michigan relied on the reasoning of this Court in *Jackson Investment Corp* and stated that "even if [the mortagee] failed to comply with the foreclosure notice statute, I would not have sufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice." *Id.* at 511.

In the present case, defendants cannot show any prejudice from any alleged defect in the notice of adjournment. Defendants were not timely in challenging the validity of the foreclosure sale, and they made no effort to redeem or take any action until well after the redemption period had run. Defendants waited until plaintiff instituted proceedings to evict them before they took any action to challenge the foreclosure sale. Therefore, defendants cannot show prejudice, and their claim of inadequate notice is without merit.

### C. EXCESSIVE FEES

Defendants next argue that the foreclosure sale should be set aside because of plaintiff's inclusion of a prepayment premium and for excessive attorney fees. However, our Supreme Court has stated that " '[a] mortgage sale is not necessarily invalid because more is claimed than is in fact due, provided the claim is in good faith.' " *Flax v Mut Bldg & Loan Ass'n of Bay Co*, 198 Mich 676, 691; 165 NW 835 (1917) (citations omitted). Further, an excessive claim for the amount due warrants setting aside a foreclosure sale only if it is significantly excessive or in bad faith and an attempt was made to redeem the property. *Id.* Michigan courts apply the principle of *de minimis non curat lex* in deciding whether the amount of the overstatement is enough to necessitate setting aside the foreclosure sale. *Id.* at 690.

Defendants claim that they owe only $556,667.24, while plaintiff originally claimed that they owed $591,601.28. This amounts to a six percent overstatement and is not significant enough to warrant setting aside the foreclosure sale. Defendants claim that the charging of the excessive fees by itself creates a presumption of bad faith on the part of plaintiff. Even if defendants' allegation were true, it would not warrant setting aside the foreclosure sale because no effort was made to redeem, as required by our Supreme Court in *Flax*.

### D. UNJUST ENRICHMENT

Defendants next claim that if this Court holds that plaintiff is entitled to the property, then they are entitled to compensation for maintaining the property under an implied-contract theory. We disagree. This Court has defined unjust enrichment as the " '(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.' When unjust enrichment exists, 'the law operates to imply a contract in order to prevent' it." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327-328; 657 NW2d 759 (2002), quoting *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). Defendants have been in possession and clearly have had the use and enjoyment of the property during the time that they maintained it. Further, defendants are in default on their mortgage, and plaintiff has been paying the taxes and insurance and carrying the interest during this entire time. Therefore, we see nothing inequitable in not allowing defendants to recover for their maintenance of the property.

E. CONVERSION OF HEARING INTO IMMEDIATE BENCH TRIAL

Finally, we believe the trial court erred in converting the July 1, 2005, hearing for summary disposition into a bench trial. This Court stated in *Vicencio v Jaime Ramirez MD, PC*, 211 Mich App 501, 504; 536 NW2d 280 (1995), that "due process in civil cases requires notice of the nature of the proceeding." Further, "[i]n any proceeding involving notice, due process requires that the notice given be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

The trial court ordered the immediate bench trial under MCR 2.116(I)(3), which provides:

> A court may, under proper circumstances, order immediate trial to resolve any disputed issue of fact, and judgment may be entered forthwith if the proofs show that a party is entitled to judgment on the facts as determined by the court. An immediate trial may be ordered if the grounds asserted are based on subrules (C)(1) through (C)(6), or if the motion is based on subrule (C)(7) and a jury trial as of right has not been demanded on or before the date set for hearing. If the motion is based on subrule (C)(7) and a jury trial has been demanded, the court may order immediate trial, but must afford the parties a jury trial as to issues raised by the motion as to which there is a right to trial by jury.

Here, plaintiff moved for summary disposition under MCR 2.116(C)(10). According to MCR 2.116(I)(3), the trial court can only order an immediate bench trial if the motion for summary disposition is made under MCR 2.116(C)(1) through (7). Therefore, the trial court had no authority to order an immediate bench trial under MCR 2.116(I)(3). All the parties were under the impression that they were appearing for a motion for

summary disposition and not a bench trial. Plaintiff should have been afforded notice of the bench trial and an opportunity to present evidence.

IV. CONCLUSION

Michigan courts have interpreted MCL 600.3224 to require the sale of individual parcels of property covered under a single mortgage only when those parcels are in fact physically separated and not connected or interrelated in their use or occupancy. The property at issue here is not physically separated; therefore, the trial court clearly erred in holding that as a matter of law these parcels must be sold separately. Further, defendants' claims of inadequate notice and excessive fees do not warrant setting aside the foreclosure sale, and their claim for unjust enrichment is without merit. Finally, the trial court erred in holding an immediate bench trial under MCR 2.116(I)(3).

Reversed and remanded for entry of a judgment of possession in plaintiff's favor. We do not retain jurisdiction.