NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0611n.06

No. 13-1981

FILED
*Aug 08, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHELLY OLSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| MERRILL LYNCH CREDIT CORPORATION, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

BEFORE:     BOGGS, COLE, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.**  Shelly Olson is one of the tens of thousands of Michigan residents to find herself in foreclosure proceedings during the recent mortgage crisis.  Unlike many in her position, Olson alleges that she rigorously pursued loan modification both before and after she defaulted, sending a total of ten loan modification packages over several years.  But Merrill Lynch Credit Corporation denied her request, allegedly after a long period of unresponsiveness.  Olson now seeks to overturn the district court's dismissal of her numerous claims against Merrill Lynch, which accuse the bank of fraudulently misrepresenting that it would consider her loan modification requests and of failing to follow Michigan law in the foreclosure-by-advertisement proceedings.  Although Olson tells a grim story of an unhelpful lender, she has failed to state a plausible claim for fraud, irregularity of foreclosure proceedings,

or other legal error. We thus affirm the judgment of the district court dismissing Olson's complaint.

## I. BACKGROUND

The following facts are taken as true and construed in the light most favorable to the Plaintiff.[1] In 2005, Shelly Olson bought a home in South Lyon, Michigan and entered into an adjustable-rate mortgage, with an interest rate not to exceed 10.625%, with Merrill Lynch. Some years later, she began having difficulties making payments due to decreased work in the construction industry in which she owned a small business and due to her minor daughter's debilitating cancer. Merrill Lynch eventually foreclosed on Olson's home and sold the property to itself, but not until after Olson had made many attempts to avoid foreclosure through loan modification and short sale.

Olson alleges that she filed her first loan-modification package in June 2008, before she ever defaulted. Merrill Lynch told her that it lost her package, so she sent a second in November 2008. Olson soon defaulted. Then, in September 2009, Merrill Lynch, through its agent Trott & Trott, sent Olson an acceleration letter and told her that her home would be set for sheriff's sale on October 2, 2009. Olson soon exercised her right under Michigan statute to request a meeting to attempt to negotiate loan modification and sent more financial information to Trott & Trott. She also sent a third loan-modification request to Merrill Lynch in October 2009.

In November 2009, Olson, accompanied by her attorney, attended her statutory loan-modification meeting, but she alleges that the representative from Trott & Trott told her that "he was just there because [she] had the right by law to have a meeting." The representative

---

[1] In addition to the allegations in the complaint, we consider documents attached to the pleadings that are integral to Olson's claims. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

requested additional paperwork, but did not conduct any negotiations or contact Merrill Lynch at the meeting.

What happened over the course of the next year is unclear. Olson alleges that Merrill Lynch told her both that she made too little money and that she made too much money to qualify for a modification, suggesting that there was some ongoing discussion. During this time, she also continued to send loan-modification packages, increasing the total of alleged packages to ten. What is clear is that on January 6, 2011, Trott & Trott sent a letter denying Olson's request for loan modification. It attached a calculation showing monthly housing-related costs of $1,620.50 and a monthly income of $2,300.00, resulting in a debt-to-income ratio of 70%. According to Olson, her actual monthly payment around this time was $650.35—it had adjusted downward due to lower interest rates during the mortgage crisis—but she does not say what her other housing-related costs were. She also does not say whether the numerous modification packages informed Merrill Lynch or Trott & Trott of her actual housing costs.

Olson did not give up. She next located two potential buyers who were willing to purchase her home in a short sale. But Merrill Lynch did not respond to either offer of purchase. In July 2011, she also sent a letter informing Merrill Lynch that her income had gone up to $6,400 per month due to a new construction contract she obtained. In August 2011, Merrill Lynch sent another letter denying Olson's loan-modification request on the basis of an "Incomplete Loss Mitigation Package"—which Olson says is untrue because the packages had been complete—and information from the credit-reporting agencies.

Olson's efforts were all for naught. Merrill Lynch claims that it sent a notice of sale on January 12, 2011 and has provided a Sheriff's Deed on Mortgage Sale showing that it sold the

property to itself at auction on February 15, 2011, before Olson sent the letter regarding her increased income and before the second denial letter.

Olson makes one other relevant allegation—that Merrill Lynch was not the owner of her loan at the time of foreclosure. She bases this allegation on a 2011 IRS Form 1099-A—a form that lenders send to borrowers when they acquire an interest in a property—which lists Wells Fargo Bank as her lender.

Olson does not allege that she attempted to redeem her property within the Michigan six-month redemption period. *See* Michigan Compiled Laws (MCL) § 600.3240(8). After Merrill Lynch filed eviction proceedings in January 2012, Olson sued Merrill Lynch and PHH Mortgage Services Corporation for: 1) violating MCL § 600.3205a by failing to delay the sheriff's sale during modification negotiations and by failing to give a legitimate reason why her modification was denied; 2) fraudulent inducement and misrepresenting that her mortgage would be reviewed for modification; 3) common-law promissory estoppel; 4) violating an obligation to comply with the federal Home Affordable Modification Program and the Economic Stabilization Act by failing to modify Olson's loan; and 5) wrongful foreclosure under MCL § 600.3204 because Merrill Lynch itself induced the default and because it no longer had a legal interest in the property. She also brought a separate claim for exemplary damages, alleging that Merrill Lynch's conduct was malicious or willful and wanton. The district court dismissed all claims, and Olson now appeals.

## II.    STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss de novo, construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). A claim will survive as long as the

complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"—meaning that it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[T]he Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001).

"Where, as here, federal jurisdiction is based on diversity, this Court applies the substantive law of the forum state—in this case, Michigan." *Conlin v. Mich. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). To discern Michigan law, we first look to the final decisions of that state's highest court; if the question is unresolved, we make an *Erie* guess as to how that court would resolve a question, treating intermediate state court decisions as persuasive authority. *Id.* at 358-59.

## III.    ANALYSIS

Without a doubt, Olson has alleged, supported by Merrill Lynch's own answer, that Merrill Lynch made little effort to negotiate loan-modification or prevent foreclosure, communicated poorly, and dragged its feet. But this does not mean that Olson alleged a plausible legal claim. Her claims fall short of that standard for both factual and legal reasons.

We begin with Olson's Michigan statutory loan-modification claim under MCL § 600.3205a. In July 2009, Michigan passed amendments to the Michigan Foreclosure by Advertisement Statute to encourage loan modification during the mortgage crisis. MCL § 600.3205a-d (2009) (repealed June 30, 2013);[2] Jeffrey D. Weisserman, *Michigan Legislature Makes Sweeping Changes to Foreclosure Process*, 36 Mich. Real Prop. Rev. 142, 142-43 (2009).

---

[2]The repealed rules apply to foreclosure proceedings in which notice was published before January 9, 2014. MCL § 600.3206(1)(b). We therefore apply the 2009 version of the statute.

Under these rules, before proceeding with foreclosure-by-advertisement, a lender was required to notify a borrower in default that she had fourteen days to request a meeting "to attempt to work out a modification of the mortgage loan to avoid foreclosure." MCL § 600.3205a(1)(d). The statute did not require the lender to actually modify the loan. MCL § 600.3205a(1)(g); *Brown v. Wachovia Mortg., N.A.*, No. 307344, 2013 WL 6083906, at *5 (Mich. Ct. App. Nov. 19, 2013), *appeal denied*, 2014 WL 2217474 (Mich. May 27, 2014) ("[N]othing in the statutory language . . . *requires* a lender to grant a borrower a modification.").

Olson's only theories under this section are that Merrill Lynch violated the statute by 1) failing to delay the sheriff's sale until loan-modification negotiations were complete and 2) failing to provide legitimate reasons why her loan-modification request was denied. Neither suffices to raise a claim under § 600.3205. The lender was not obligated to delay foreclosure until negotiations were complete—only to suspend it for 90 days after the original notice was sent, MCL § 600.3205a(1)(e)—and she alleges facts showing that Merrill Lynch did wait to foreclose-by-advertisement until after it sent her a modification denial. *See also Brown*, 2013 WL 6083906, at *3 n.2 (rejecting claim that bank violated the "stay" provision where foreclosure occurred over 90 days after modification meeting). Moreover, she alleges that Merrill Lynch did give her reasons why her modification request was denied—the denial letters showed a presumably too high debt-to-income ratio of 70%, that she did not send complete loss mitigation packages, and that information from credit-reporting agencies warranted denial. She alleges that she did send complete modification packages, but she does not allege that the response was incorrect on the basis of her application or that she actually met the statutory or any other criteria before the sheriff's sale occurred. *See* MCL § 600.3205c(1)(a)-(b) (indicating that the loan modification program targeted those whose housing-related debt-to-income ratio could

be reduced to 38% or less after specified adjustments). Finally, Michigan courts have held that if a lender fails to adequately justify a modification denial under MCL § 600.3205c, the borrower's *only* remedy is to convert the foreclosure-by-advertisement to a judicial foreclosure before the sheriff's sale takes place. *Brown*, 2013 WL 6083906, at \*5-6 (interpreting MCL § 600.3205c(8)).

Similar problems defeat Olson's fraudulent-inducement and misrepresentation claims. Michigan law renders a foreclosure proceeding voidable after the six month redemption period if the plaintiff shows fraud or some other highly suspect irregularity in the foreclosure proceedings. *See Conlin*, 714 F.3d at 359–60 (citing *Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007)). But Michigan sets a "high standard" for such a showing, *id.*, and such claims must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). *See also Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752-53 (6th Cir. 2012) (applying particularity requirement that plaintiff must plead the time, place, and content of the misrepresentation to a Michigan mortgage-fraud claim). In Michigan, both fraudulent inducement and fraudulent-misrepresentation claims require, among other things, that the defendant made a materially false statement or misrepresentation. *See Hord v. Envtl. Research Inst.*, 617 N.W.2d 543, 549 (Mich. 2000) (fraudulent misrepresentation); *Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995) (fraud in the inducement).

Olson's theory is that Merrill Lynch fraudulently misrepresented that it would review her mortgage for potential modification when it had no intention of doing so and that this prevented her from exercising any other legal options. She alleges that a representative from Trott & Trott indicated that there would be no negotiation but requested more information; that Merrill Lynch told her that she made too little money and later that she made too much money to qualify for

modification; that Merrill Lynch waited fourteen months after the meeting to deny her request; and that Merrill Lynch provided three reasons for the denial. Under the high standards applicable here, this is not sufficient to support a plausible inference that Merrill Lynch falsely represented that it would review her request for modification. *See also Brown*, 2013 WL 6083906, at *6-7 (rejecting a very similar fraud in the inducement claim). Olson raises additional fraud theories in her appellate brief, but we decline to consider these new claims on appeal. *See Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 520 (6th Cir. 2013) (citing *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)).

Olson's promissory-estoppel claim fares no better. A promissory-estoppel claim is valid where the plaintiff alleges a broken promise that the promisor reasonably expected to, and did, induce action or forbearance to the promisee's detriment. *State Bank of Standish v. Curry*, 500 N.W.2d 104, 107 (Mich. 1993). The promise itself must be "actual, clear, and definite"—a conditional promise will not do. *Gore v. Flagstar Bank, FSB*, 711 N.W.2d 330, 330-31 (Mich. 2006) (Taylor, J., concurring); *see also First Sec. Sav. Bank v. Aitkin*, 573 N.W.2d 307, 317 (Mich. 1997) (overruled on other grounds in *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 33 n.2 (Mich. 1999)). And the promisee's reliance must be reasonable. *Curry*, 500 N.W.2d at 107-08. Olson alleges that Merrill Lynch made a promise that it would review her for potential modification in accordance with the law, but, as explained above, Olson did not plausibly allege that Merrill Lynch failed to consider her application in accordance with the law. And based on the limited facts alleged, we cannot make a logical inference that she reasonably relied on a promise to review her application.

Olson's separate claim under the Home Affordable Mortgage Program (HAMP) also fails. HAMP is a federal program enacted pursuant to the Emergency Economic Stabilization

Act, 12 U.S.C. § 5201 et seq., that gives lenders incentives to offer borrowers—with a mortgage payment-to-income ratio of over 31%—loan modifications with more favorable terms. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012). "HAMP and its enabling statute do not contain a federal right of action." *Id*. at 555. Therefore, a plaintiff can only bring a HAMP-related claim if state law provides one. *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 166-67 (6th Cir. 2014). Because Olson's HAMP claim rests on HAMP alone, and not on state law, her claim fails as a matter of law. To the extent that Olson claims that Merrill Lynch breached its contractual obligation with the federal government, Olson failed to allege a theory that Merrill Lynch owed a contractual duty to Olson in connection with its contract with the government.

Finally, Olson's claim of wrongful foreclosure under MCL § 600.3204 also fails. This section allows foreclosure-by-advertisement if, among other things, the borrower has defaulted and the party foreclosing is the owner of the indebtedness secured by mortgage. MCL § 600.3204(1)(a), (d). Olson's theories are that her default was invalid because it was induced by Merrill Lynch's failure to modify her loan and because an IRS Form 1099-A from 2011 shows that Wells Fargo had an interest in the property. Olson's complaint indicates that she defaulted on her mortgage because she was having difficulty making payments; a bank's failure to modify her loan does not amount to but-for causation of the default of the original loan. As for her allegation regarding ownership, Olson has not plausibly alleged that Merrill Lynch assigned or sold its interest before the sheriff's sale. IRS Form 1099-A is a document filed by the lender when it acquires an interest in a property or has reason to know a property has been abandoned. *See* Form 1099-A, Acquisition or Abandonment of Secured Property, IRS, http://www.irs.gov/uac/Form-1099-A,-Acquisition-or-Abandonment-of-Secured-Property.

Olson's allegation that Wells Fargo acquired an interest some time in 2011 does not indicate that Merrill Lynch had no interest in Olson's debt at the time of the sheriff's sale in February 2011. *Cf. Hargrow v. Wells Fargo Bank, N.A.*, 491 F. App'x 534, 536-37 (6th Cir. 2012). Additionally, foreclosure-by-advertisement only becomes voidable for a violation of MCL § 600.3204 if the plaintiff shows prejudice resulting from the defect, meaning she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). Olson has not plausibly alleged such prejudice because she has not alleged that she qualified for loan modification before the sheriff's sale.

Because Olson did not plausibly allege her first five claims, we have no occasion to consider her claim for exemplary damages.

## IV. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's dismissal of all of Olson's claims.